## WHITE v. HAMPTON.

1. SETTING DOWN A CAUSE FOR HEARING. In a chancery proceeding, after the filing a report of the commissioner appointed to take an account between the parties, and the overruling of exceptions taken thereto, the court may hear and determine the cause upon its merits, without a further order for hearing.

2. OVERRULING EXCEPTIONS. The overruling of exceptions to a report of a commissioner has the effect of confirming the report.

3. ANSWER UNDER OATH. A defendant in chancery can not by a waiver of a sworn answer in the bill be deprived of his right to answer under oath, and to have such answer considered as evidence.

4. NO PREJUDICE. The refusal of the court below to treat the sworn answer in chancery as evidence will not be regarded as sufficient cause for a reversal of the decree when the record shows that after giving to such answer its proper effect, the decree is sustained by the evidence.

5. MASTER'S REPORT. A master's report should state fully what facts, relating to the subject matter of the examination, do, and what do not, appear. His conclusions should be based upon the facts thus stated.

6. SETTING ASIDE A REPORT. A master's report may be set aside, or referred back for irregularities in his proceedings or a failure to report upon all the matters submitted to him.

7. EXCEPTIONS. Erroneous conclusions upon the facts submitted to him for decision are proper ground for exceptions, but exceptions must be founded upon the facts stated in the report, or in the documents and exhibits accompanying the same.

8. SAME. The exceptions must point out particularly the error complained of. The parts not excepted to will be taken as admitted.

9. REFERENCE OF ISSUES TO A JURY. In chancery proceedings the chancellor *may* refer a doubtful question of fact to a jury, or he may decide the question himself. Such reference is not a matter of right.

10. WRITTEN INSTRUMENT. The construction of a written instrument may be reserved by the chancellor for decision on the final hearing after the report of a commissioner on other matters in the cause.

11. APPOINTMENT OF A TRUSTEE. When a trustee, named in a deed of trust, fails or refuses to execute the trust, a court of equity may appoint another to act in his stead.

12. ACCOUNT. Courts of equity exercise jurisdiction in cases of mutual accounts where the circumstances render a legal remedy inadequate, or where the exercise of such jurisdiction will avoid a multiplicity of ' suits.

13. DECREE. A chancellor may by decree settle the equities and liabil-

White v. Hampton.

ities of the principal parties to the suit, and reserve for subsequent examination questions of liens in favor of other persons.

14. SWORN ANSWER AS EVIDENCE. A sworn answer in chancery, when responsive to the allegations of the bill, is to be treated as evidence in the case, and must be overcome by the evidence of two witnesses, or that of one witness, and corroborating circumstances equal to the evidence of another.

15. RESPONSIVE ALLEGATIONS. The responsive character of allegations considered and discussed.

*Appeal from Scott District Court.*

MONDAY, DECEMBER 28.

IN CHANCERY. The bill charges that complainant, in 1851, employed the respondent, Hampton, as an agent for the sale and location of land warrants, and that he furnished him with a large number of warrants from that date until July, 1855. To his bill he annexes a specific account of each warrant furnished, when and to whom sold by Hampton, the price paid or to be paid by the purchaser, the amount of principal and interest due, and the amount paid over to complainant by said Hampton. It is also charged that Hampton received for complainant a large amount of money in the sale of these warrants, and in the disposition of the lands entered and forfeited by the purchasers, which he failed and neglected to pay over; and that in July, 1855, he executed a deed of trust to Morgan Reno, to secure complainant whatever might be found due him on settlement. The bill also charges that Hampton has in his hands, unaccounted for, notes and money to the amount of ten thousand dollars, and that the notes alone, with the warrants unaccounted for amount to over five thousand dollars.

By the terms of the deed of trust, each party was to render a statement of his account, Hampton by the 10th of August 1855, and White within ten days thereafter, and if they could not agree certain attorneys agreed upon and named in the deed, were to draw up a statement and submit it to the District Court for determination; if H. failed to pay

W. the amount found due, within six months after final settlement, or the adjudication in court as contemplated, Reno was to sell the property named in the deed to pay the same, and if W. failed to keep his agreement there was to be a forfeiture of his rights under such deed.

Complainant avers that he was always ready and willing to fulfil his part of the contract as set forth in said deed; that Hampton was not and did not; that the parties differed; no agreed case was made by the attorneys; that Reno refuses to act as trustee; and that Hampton executed mortgages to other parties, on the property described in the deed of trust, both prior and subsequent thereto.

Hampton and these mortgagees are made respondents, and the bill prays that an account may be taken of the land warrants, moneys, notes, &c., in Hampton's hands, belonging to complainant; that he may be decreed to pay the same over; and that said deed of trust may be enforced by the appointment of another trustee. No discovery is asked, and a sworn answer is waived. Hampton answered; complainant amended his bill; Hampton made an amended and a second amended answer; a general replication was filed which it was agreed should stand as a special one. The cause was referred to a commissioner to state an account. He reported; and to his report exceptions were filed by Hampton. These were overruled and a decree entered in favor of complainant for the amount found due by the commissioner, ($3675.99,) finding also that complainant was entitled to the security provided for by said deed of trust; that Hampton should pay the amount found due within six months, and that in default thereof the Sheriff of Johnson county should proceed to sell the lands therein conveyed to satisfy said decree, with interest and costs. The cause was continued as to the other respondents, and a commissioner appointed to ascertain the amount and date of the several incumbrances on said lands, and report the same at the next term. Hampton appeals.

*Templin & Fairall* for the appellant.

*Grant* and *Clark & Bro.*, for the appellee.

WRIGHT, C. J.—We have before us in this case a record of about four hundred pages, composed of pleadings, exhibits, the commissioner's report, and a large number of depositions. Counsel have argued the cause very fully and presented at length their grounds for, and against reversing the decree below. Having arrived at the conclusion that this decree should in all respects stand affirmed, we shall proceed to state briefly the grounds upon which this conclusion is based. And in doing so we shall, for convenience, notice the more important objection urged by appellant to the decree and proceedings in the District Court.

I. And first of some minor matters relating to the regularity of the proceedings. It is objected that the cause was determined and final decree rendered when the respondent had not submitted it for determination. It seems however that in October, 1858, the commissioner was appointed to take the testimony and an account of the matter in controversy between the parties, and report the same to the court at the next term. At the next January term, the cause was submitted to the Hon. John F. Dillon, sitting in exchange with the Hon. W. E. Miller, who had been counsel in the cause. The record discloses that the cause first came to be heard on the exceptions filed to the commissioner's report, and these being overruled, and the report in all respects confirmed, the cause then came on for hearing upon the petition, answer, &c. We say this is what the record discloses. It is true that a bill of exceptions is found, which recites that appellant objected to the rendition of the decree for certain reasons, as that the cause had not been submitted to Judge Dillon upon its merits, and that appellant had no notice of such submission, but there is nothing to show that such objections were well founded. On the contrary it sufficiently appears affirmatively, that the cause was submitted

upon the exceptions and for final decree. A further, or other order, setting the case down for hearing, was not necessary after overruling the exceptions to the report. The overruling of these had the effect of confirming the report, and it was entirely competent for the court then to hear the cause upon its merits, and especially so as no suggestion seems to have been made for a re-submission of the matter to the comissioner, nor any reason shown why the cause was not then ripe for final adjudication.

II. It is also urged that at the time of the reference to the master and the entry of the decree, the issue was not made up, or if so, due weight was not given to respondent's answer. The complainant by his bill waived a sworn answer. Respondent, nevertheless, answered under oath, and this right was denied him in the District Court. This ruling, he brought before us at the last June term, (9 Iowa 181,) and it was held he could not be thus deprived of his right to answer under oath. At the time of the reference and decree, this decision had not been made, and the case was heard therefore, as may be admitted, without giving respondent the benefit of his sworn answer. As we conclude however, giving the answer all the effect that can justly be claimed for it, when sworn to, that the decree upon the merits is fully justified from the evidence, it follows that the irregularity or defect complained of, has worked no prejudice, and should not operate to reverse the cause. This view of the case, to-wit, that the evidence fully sustains the decree, we shall examine hereafter.

III. So far as the exceptions filed to the master's report relate to any claimed irregularity in his proceeding, they, according to strict equity practice, were properly overruled. For such errors or defects, the proper course is to set aside the report, or refer it back for correction. And the same may be said as to the objection that he failed to report upon all the matters referred to him. In making his report it is the duty of the master to state, how the facts or matters referred to him, upon examination, do or do not appear. If

he comes to a wrong conclusion upon the matters thus submitted to him for decision, exceptions may properly be filed, and the opinion of the court taken thereon.  2 Danl. Ch. Pr. 1475, 1491; *Tyler* v. *Simmons*, 6 Paige 127.  These exceptions are to be founded on the facts, stated in the master's report, or in the documents and exhibits accompanying the same.  *Harding* v. *Hardy*, 11 Wheat. 103 ; *Dexter* v. *Arnold*, 2 Sumn. 108.  And a general exception will not be regarded.  The error must be pointed out, otherwise the part not excepted to will be taken as free from objection or admitted.  6 Johns. 566; *Story* v. *Livingston*, 13 Pet. 359.

IV. It is objected that the court should, as requested by appellant, have referred certain parts of the account to a jury, after the coming in of the report.  We are not aware of any rule by which the appellant could claim such a reference as a matter of right.  In *McDaniel* v. *Marygold*, 2 Iowa 500, in discussing the right of the chancellor to take the opinion of a jury upon doubtful questions of fact, it is said that, "We entertain no doubt but that he may decide the question or questions himself and refer an issue to the jury." And see *Hall* v. *Doran*, 6 Iowa 438.  And see also 1 Story Eq. Jur. section 450, where it is said that the chancellor "may, if any doubt arises on any particular demand, direct the same to be ascertained and determined by an issue and verdict at law."  Thus we see, upon authority, that such a reference is most clearly within the chancellor's discretion.  Of this discretion, there has been no abuse in this instance.

V. The complainant claimed for money due upon an account, and it was proper, under the proof, to allow interest at six per cent, after six months from the date of the last item.  Laws of 1853, page 67.  The provisions of the trust deed, not having been carried out by the parties, we need not look to them to ascertain when interest was to commence. The case stands in this respect as if no express contract existed.  Respondent is liable upon the account as for money had and received from the complainant and for his use, and

under the statute should be charged with interest after six months from the date of the last item.

VI. The objection that the notice does not report as to the rights of the parties under the trust deed, is well answered in two ways. The first is that this question was not referred. The second that there was no necessity for such a reference. The determination of the question, involved only the construction of a written instrument, and this, the court might well reserve for examination and decision upon the final hearing.

VII. We are next met with the objection that the chancellor had no jurisdiction, and that there was no equity in complainant's bill. For several reasons this position is untenable. The complainant had a right to ask a court of equity to appoint a trustee to supply the place of Reno, who had failed and refused to execute the trust. Equity would not allow the trust to fail because of the refusal of the trustee to act. This appointment of a trustee under such circumstances is a familiar branch of equity jurisdiction. Story's Eq. Jur. section 98. But a ground equally satisfactory is that constituting the main object and purpose of the bill. Courts of equity have undoubted jurisdiction, and have for a long time exercised it, in cases of mutual account, upon the ground of the inadequacy of the legal remedy in part, as also for the purpose of avoiding multiplicity of suits. "So that now," says Story (Eq. Jur. section 442,) "the jurisdiction extends not only to cases of an equitable nature, but to many cases, where the form of the account is fully legal, and the items, constituting the account, are founded on obligations fully legal." See section 449, note 1; 3 Bla. Com. 164. Not that a court of equity will interfere and decree an account in all cases where an action for money had and received, or *indebitatis assumpsit* may be brought, but as was said in *Corporation of Carlisle* v. *Wilson*, 13 Ves. 278, "when the subject can not be so well investigated in those actions." And see Story Eq. Jur. section 455–6–7; *Fowle*

v. *Lawrason*, 5 Pet. 495; 10 Johns. 587, 17 Ib. 384; *Armstrong* v. *Gilchrist*, 2 Johns. Cas. 424.

VIII. Again it is objected that no decree should have been entered as to the respondent Hampton, until the coming in of the report of the master as to the incumbrances upon the land included in the deed of trust. To this course we can see no valid objection, and least of all any that can avail the party now making it. Who owned the prior or subsequent mortgages, their amounts and relative dates, were inquiries in no manner material in determining the equities between the present parties. It was entirely competent and by no means irregular for the chancellor to settle the equities of the parties, as to matters growing out of the account, and the fiduciary relation existing between them, and to reserve a question of liens held by other persons for subsequent examination. And one sufficient reason for this course may be found in the fact, that if these equities had been settled against complainant an investigation of the equities of the incumbrancers would have been unnecessary. And all possible objection to this course is obviated in the present case, from the fact that time was given respondent to pay the amount found against him until after the coming in of the master's report on the subject of incumbrances, and from the additional fact that the master did in fact report before the expiration of time thus given.

IX. The ground upon which jurisdiction in matters of this sort are said to be maintainable, (where there is a remedy at law,) are two fold. In the first place if the party seeks a discovery of facts, which upon his bill are shown to be material to his recovery, and a discovery is obtained, the court having thus a rightful jurisdiction, will proceed to give relief, that a multiplicity of suits may be avoided. The second broad and general ground for the jurisdiction is, that the remedy is more complete and adequate in equity than at law, and that it prevents a multiplicity of suits. In the case before us we do not understand complainant to seek a discovery. There is no appeal to the conscience of the opposite party to dis-

close any matter connected with the account. The account is a very complicated one, running through a period of three or four years, and covering in amount something over twenty thousand dollars. It is not true, therefore, as claimed by respondent, that his answer is to be taken as conclusively true. So far as it is responsive to the allegations of the bill it is to be treated as evidence in the case, and must be overcome by the testimony of two witnesses, or that of one witness and circumstances of corroboration equal to the second. But this rule does not apply, as to so much of the answer as sets up new matter in avoidance of the allegations confessed. Such allegations must be proved by facts *aliunde*. And this is emphatically true, on a general bill to account, when the answer sets up new facts in discharge or avoidance, or alleges separate agreements, independent of those charged. And so when the answer is responsive, if it is contradicted by an instrument in writing proved to be respondent's it may be overcome by it.

The general rule upon this subject is thus stated in *Green* v. *Vandenian*, 2 Blackf. 328: It is a general rule that an answer is to be taken as true unless disproved by two witnesses, or by one witness and corroborating circumstances ; and when the term answer is taken in its strictest sense, we believe there is no exception to this rule ; but an answer in this sense is not what a defendant may say on his own belief, but what he says directly responsive to the charges in this bill. Matters however that are set up in avoidance, that are not responsive to the bill, when in issue, must be proved by the defendant, for if the answer admits a fact, but insists on a distinct fact in avoidance the defendant must prove the fact.'' See 7 Ves. 404–587 ; 1 John. 580 ; 14 John. 63 ; *Hart* v. *Ten Eyck*, 2 John. Ch. 62.

It is to be observed, however, that upon this subject the cases and books abound in many nice distinctions, and especially in cases turning upon the unity of the transaction. The point of difficulty always is in settling what facts stated in the answer are distinctly responsive, and what are set up in avoid-

ance.   This once settled there is no question as to the rule of law which must govern.

Without following or discussing this question further, we proceed to apply the principles enunciated to the pleadings and evidence in the case before us.   Among other matters relied upon by the respondent are two items, one for $3,000 damages sustained by him on account of the failure of complainant to furnish respondent land warrants, and the other for $2,000, for that complainant supplied another agent in the same locality with land warrants and thus interfered with the agency and business of respondent.   These items most clearly constitute new matter, and so much of the answer as sets them up is in no manner responsive to the bill.   Without proof to sustain them, therefore, they were properly rejected by the master.   No such proof is found.   No contract existed by which Hampton was to be complainant's sole agent for the disposition of land warrants, nor by which complainant was bound to keep him supplied with such warrants.   If there was no such contract there could be no breach, and of course no damages.

And these remarks apply to very many of the other items embraced in the first exception to the master's report.   Thus, in his answer, he claims a commission for transmitting money to complainant, for making deeds some one hundred and ninety dollars, for half profits on cash entries, certain warrants located, and forfeited lands, per cent commission on money used in locating lands in addition to locating fees, and various other items of a similar character.   And yet in setting up these items he is not responding to anything set up in the bill.

The parties do not disagree as to the terms upon which the warrants were received and to be sold by the agent.   He was to have so much for locating or selling each warrant, depending upon its denomination, and beyond this whatever is alleged by respondent as to his compensation is new matter and calls for proof.

Every material item of the account annexed to plaintiff's

bill is substantially admitted by respondent. Some of them he attempts to avoid by matters stated in his answer. As to such parts of the answer as may, under the most favorable view of the rule for respondent, be regarded responsive and therefore evidence, we think they are fully overcome either by the respondent's previous written admissions and agreements, or by sufficient testimony, or by both. And as to such as set up new matter, there is an entire want of proof.' The master seems to have exercised great care in stating the account, and his report is quite clear and methodical. In our opinion its conclusions are fully warranted by the testimony. Granting that he refused to give the respondent the benefit of his sworn answer, it can make no difference, for we have so regarded it and are still bound to conclude that the exceptions were not well taken. The radical error of respondent consists in the fact, that he claims for his answer, the effect of one which is distinctly responsive to the bill, and the bill itself as one filed for discovery. Not being sustained in these positions he has little else upon which to stand.

X. It is said that an *account stated* is a bar to a bill in equity to recover the same ; that there was such an account in this case, which is plead by respondent, and that therefore the bill should be dismissed. We have already shown that equity properly acquired jurisdiction in order to supply the trustee to execute the trust. And we may add here, that another part of the bill giving jurisdiction is that which asks that respondent be decreed to convey two tracts of land refered to in the deed of trust, and which he had therein obligated himself to convey. But waiving these matters, we have also seen that as a bill to account equity had jurisdiction, and there is nothing established or tending to establish the position that the account had been stated. No account was ever examined and signed by the parties, nor was any accepted either expressly and impliedly. What will amount to a stated account from the presumed acquiescence of the parties arising from a lapse of time and their failure to object to the same within a reasonable period, must depend upon cir-

cumstances, to be judged of by the nature of the transaction and the habits of business and courses of trade. No such presumption arises in this case, for it seems from the time of giving the deed of trust, which as shown by its terms, contemplated an early settlement, the parties made efforts to settle and complainant threatened to bring suit, until finally this action was brought. It was because no stated account could be agreed upon that complainant filed this bill.

The deed of trust manifestly contemplated a settlement, and that it was to be executed only upon condition that such settlement was made. We see nothing justifying the conclusion that the failure to settle was from the fault of complainant. There is nothing to lead us to suppose that he has acted in bad faith. The charge of negligence, in not attempting to procure a settlement, is not sustained by the proof. And though he did not furnish his statement of the account on the very day named in the trust deed, he did within a few days thereafter. There being then good faith on his part, and no negligence in the performance of the duty imposed upon him by the deed, and it appearing to us that it would work an inequitable loss or injury to complainant to deprive him of all benefit of said deed, we think he was entitled to have it executed as far as it can be in the present attitude of the case. Compensation and not forfeiture is the doctrine of a court of equity.                    Decree affirmed.