## M. A. ANDING v. R. LEVY ET AL.

1. PRIVILEGE TAX. *Unlicensed trader. Illegal contract.*
   Under the fifth section of the privilege-tax law (Acts 1875, p. 10) an unlicensed trader's contracts are illegal only when made while he was in default.

2. STATUTES. *Repeal. Penalty. Pending suits.*
   In the absence of a saving clause, the repeal of a statute imposing a penalty to be recovered by action, or enforced by prosecution, ends all proceedings to enforce it.

3. PRIVILEGE TAX. *Void contract. Repeal of the statute.*
   The fifth section of the privilege-tax law, which avoided contracts

| | |
|---|---|
| 57 | 51 |
| 70 | 110 |
| 57 | 51 |
| 75 | 339 |
| 57 | 51 |
| 81 | 236 |
| 57 | 51 |
| 83 | 107 |
| 57 | 51 |
| 91 | 689 |
| 91 | 714 |
| 57 | 51 |
| e 95 | 201 |
| L95 | 209 |

made by a trader while in default, was self-executing, and its subsequent repeal did not make such contracts valid.

4. SAME. *Re-enactment in repealing statute.*

That section, however, being re-enacted *ipsissimis verbis* in the act of March 5, 1878 (Acts 1878, p. 12), which repealed the former statute, was not repealed, but continued law.

5. NEW TRIAL. *Exclusion of evidence.   Immaterial errors.*

Where material and competent evidence has been excluded, the judgment will be reversed, unless the verdict would be clearly right, if the evidence had been admitted.

6. SAME. *Single issue.*

If the excluded evidence was pertinent to the only issue raised, this court, to affirm, must be satisfied that the evidence, if admitted, would have been insufficient to authorize a different verdict.

7. SAME. *Two issues.   Case in judgment.*

If the evidence was pertinent to one of two issues, to justify the verdict on the second, which involved the trial of a fact, which is a conclusive answer to the claim set up under the first, it must appear that the second issue was tried, and that a contrary verdict thereon would be vacated.

8. SAME. *New points in Supreme Court.*

But in the last case it is sufficient, if, as in *Bell* v. *Medford, ante,* 31, evidence, in its nature incontrovertible, as, for instance, a record, was introduced, which in law would have compelled the rendition of the verdict.

9. ACCOUNT STATED. *Definition.   Payment.*

A stated account is an agreement, after an examination of the accounts between the parties, that the items are true, and the balance correct ; and such an account, which shows itself satisfied, is evidence of payment.

10. SAME. *Merchants.   Implied assent.*

The rule making an account rendered and retained without objection a stated account applies only in controversies between merchants.

11. SAME. *Admission.   Evidence.*

But such rendering and retention between parties other than merchants is an element in the case for the consideration of the jury, so far as it shows an implied assent to the correctness of the account.

12. SAME. *Circumstances for the jury.*

In determining the weight to be given to such an account, the jury may, among other circumstances attending its rendition and retention, consider the intelligence and business capacity of the recipient, his confidence in the honesty and accuracy of the other party to the account, the length of time he has retained it, and his opportunities for examining it, as well as the course of dealing between the parties.

APPEAL from the Circuit Court of Lincoln County.

Hon. J. B. CHRISMAN, Judge, did not sit in this case, but Hon. A. G. MAYERS presided by interchange.

The appellee, her husband joining for conformity, sued the appellant in assumpsit for $276.77 on an open account sworn to under the statute consisting of $616.77 of debits extending from March to December, 1877, with credits thereon undated, amounting to $340, and not applied to any particular items of debit.   The defendant pleaded the general issue with counter affidavit denying certain items, and a special plea that the plaintiff had not taken out a license under the privilege-tax law ; and the plaintiff joined issue.   The plaintiff's counsel then served on the defendant a notice to produce at the trial the bills of goods bought by the defendant with the credits thereon.   The defendant produced, and the plaintiff read in evidence, the account described in the opinion, for $329, of items of debit extending to Sept. 13, 1877, balanced by credits similar to some on the account filed with the declaration, the last credit being dated Dec. 5, 1877, and the defendant stated that the plaintiff had delivered this account to him.

On the plaintiff's motion, the court excluded all the defendant's testimony in reference to the plaintiff's failure to pay the privilege tax, when it was due on May 1, 1877, or within thirty days thereafter ; and refused to charge the jury for the defendant that, if the plaintiff was doing business as a merchant from March to December, 1877, she was liable to pay the privilege tax, and if she failed to pay it when due, or within thirty days thereafter, and to obtain a license to follow the business of a merchant, she could not recover for such goods as were sold after the time said privilege tax was due.

On a general verdict for $235, there was a judgment for the plaintiff.   A motion for a new trial, made by the defendant for error in excluding the testimony and refusing his instruction, was overruled.

*R. H. Thompson*, for the appellant.

Sect. 5, Acts 1875, p. 10, is clearly constitutional, and the action of the court was in violation of it.   The clause which prohibits the maintenance of a suit is a part of the penalty imposed on a crime.   It is as much the law of the State as the statute rendering void gambling contracts.

*A. C. McNair*, on the same side.

1. It was the policy of the statute, Acts 1875, pp. 3, 10, that a merchant who had not first paid his tax could not make a binding contract, and the act did not infringe the provision of the Federal Constitution prohibiting States from passing laws impairing the obligation of contracts. Cooley on Const. Lim. 284. The debt was contracted after the law was enacted. The legislature had power to impose the tax, *Stewart* v. *Potts*, 49 Miss. 749 ; and also power to regulate the penalty. In an analogous case, it has been decided that no action can be maintained on a contract the consideration of which is prohibited. *Deans* v. *McLendon*, 30 Miss. 343. A contract which violates the revenue laws of the country in which it is made is void. 2 Parsons on Contracts, 753 ; *Johnson* v. *Hudson*, 11 East, 180 ; *Cope* v. *Rowlands*, 2 M. & W. 149 ; *Smith* v. *Mawhood*, 14 M. & W. 452 ; *Meux* v. *Humphries*, 3 C. & P. 79 ; *Holman* v. *Johnson*, 1 Cowp. 341 ; *Armstrong* v. *Toler*, 11 Wheat. 258 ; *Cambioso* v. *Maffett*, 2 Wash. C. C. 98 ; *Hannay* v. *Eve*, 3 Cranch, 242 ; *Lightfoot* v. *Tenant*, 1 B. & P. 551 ; *Langton* v. *Hughes*, 1 M. & S. 593 ; *Ritchie* v. *Smith*, 6 C. B. 462 ; *Hodgson* v. *Temple*, 5 Taunt. 181 ; *Catlin* v. *Bell*, 4 Camp. 183. The circuit judge held that the repeal of the act of 1875 by the act of March 5, 1878 (Acts 1878, pp. 12, 23) deprived the defendant of that defence ; but, if the debt was illegal, neither the defendant nor the legislature could impart to it validity. *Harris* v. *McKissack*, 34 Miss. 464 ; *Porterfield* v. *Butler*, 47 Miss. 165. If the act of 1875 was, so far as it related to merchants, repealed by the act of 1878 (Acts, 1878, pp. 12, 14), it could not affect this case, because under both the acts the privilege tax " on each store stock under two thousand dollars," is five dollars. The statute of 1878 is necessarily an amendment to the act of 1875. They are *in pari materia*, belong to one system, and are to be construed together. *Scott* v. *Searles*, 5 S. & M. 25 ; *Grand Gulf Bank* v. *Archer*, 8 S. & M. 151. Repeal by implication is not favored in law. *McAfee* v. *Southern Railroad Co.*, 36 Miss. 669 ; *Richard* v. *Patterson*, 30 Miss. 583 ; *Southern Railroad Co.* v. *Jackson*, 38 Miss. 334 ; *Commercial Bank* v. *Chambers*, 8 S. & M. 9 ; *Planters' Bank* v. *State*, 6 S. & M. 628. Such repeal, when allowed, extends

only so far as the statutes are manifestly repugnant, *White* v. *Johnson,* 23 Miss. 68, which these statutes are not.

2. But, notwithstanding the error of the lower court on the question of the privilege tax, the opposing counsel insist that the judgment should be affirmed, because the part of the account prior to the date of the license has been paid. This is not proved, for the plaintiff failed to establish the identity of the account which appears paid, with the first part of the account sued on, or to show the circumstances attending its delivery and retention. Again, it has been held that, where one of the debts is legal and the other illegal, a payment must be applied to the legal debt, *Wright* v. *Laing,* 3 B. & C. 165; and that payments on an illegal debt can be recovered back. *Worcester* v. *Eaton,* 11 Mass. 368, 376; *Bond* v. *Hays,* 12 Mass. 34; *Boardman* v. *Roe,* 13 Mass. 104; *White* v. *Franklin Bank,* 22 Pick. 181; *Peck* v. *Burr,* 10 N. Y. 294. Hence the payments, if applied to the account sued on, satisfy it in full. Further, the record does not show on which point the verdict is founded, and, to warrant an affirmance in such case, it must appear that there was no error in either. *Hills* v. *Eliot,* 12 Mass. 26. The jury may not have passed upon the latter issue.

*Sessions & Cassedy,* for the appellee.

1. The fifth section of the privilege-tax law of 1878 (Acts 1878, p. 23) repeals all other acts regulating taxes on privileges, including, of course, the act of 1875. It is true that the act of 1878 imposed a penalty similar to that of 1875, but that is prospective, and this was after the account sued on was contracted. The repealed statute contained the penalty relied on by the defendant below in his special plea. By the following cases, the effect of such repeal is illustrated: *Teague* v. *State,* 39 Miss. 516; *Yeaton* v. *United States,* 5 Cranch, 281; *Musgrove* v. *Vicksburg Railroad Co.,* 50 Miss. 677; *French* v. *State,* 53 Miss. 651.

2. But even if the statute was not repealed, and the court was wrong in excluding the testimony, still the verdict was right and the judgment should be affirmed. The evidence does not show that the plaintiff was in default at the time when the debt sued for was contracted. The verdict is

for the balance due, which embraces only those items which were sold after the privilege tax was paid. The instruction asked for the defendant below announced the startling proposition that if a merchant fails to pay a privilege tax at the time it is due, or within thirty days thereafter, he cannot subsequently comply with the law, but must permanently remain in the position of a violator thereof.

3. The constitutionality of these laws is not discussed, because the case of the appellee seems sufficient without it. But the question is not waived or conceded.

GEORGE, C. J., delivered the opinion of the court.

This was an action by a merchant against a customer to recover an open account accruing during the year 1877. One of the defences set up by the defendant was, that the plaintiff had failed to take out a license as a merchant within thirty days from May 1, 1877, and until August 1 of that year. And he insisted that not only so much of the account as was created during the term in which the plaintiff was in default was not collectible, but that the whole amount, including that part of it which was created subsequent to the time when the tax license had been obtained, was illegal and void.

The language of the act of 1875 (Acts of 1875, p. 10, § 5) is very broad in condemning transactions by persons who, being required to take out licenses, fail to do so within the time prescribed by the statute ; but we do not think that it is a fair construction of the statute to give it the extended operation contended for. The statute makes it a misdemeanor to do business without a license, and imposes a fine or imprisonment or both, in the discretion of the court, as a punishment; and it then provides as follows : —

" And any debts or claims that may accrue to any person, on account of the business herein taxed, who shall fail or neglect, within thirty days after such license is due, to pay the same, shall be null and void, and no suit shall be maintained in any court of law or equity in this State to enforce the payment of such claims, or a compliance with contracts in favor of any person or persons failing to pay the privilege tax required by this act."

The provision of the statute is highly penal, and should not receive a construction which would extend it beyond the obvious purpose and object of the legislature in enacting it. This manifest object was to secure the payment of the license tax within the time limited, or at the earliest possible day afterwards. It was no part of the purpose of the act to condemn or discourage the business or calling upon which the license tax was imposed. The declaration of the illegality and nullity of the contracts of the unlicensed party was in aid of the collection of the public revenue. A construction of the statute which would not allow a subsequent compliance to relieve a party from the incapacity to carry on business occasioned by a temporary failure to pay, would take away a strong inducement to the defaulter to comply with the law by a payment of the license. The act also requires the tax collector to collect by distress the whole amount of the yearly license tax from any defaulter. It would be highly inequitable to enforce the collection of a tax as a license for carrying on business, and then to prevent the transaction of the business. We are, therefore, of the opinion that the illegality of the contracts of an unlicensed trader applies only to such contracts as were made during the time the trader was in default.

The court below, however, did not sustain the defence even to the extent above indicated; but excluded from the jury all the evidence which had been introduced showing that the plaintiff had not paid the license tax till August 1, 1877. This action of the court, as we learn from the brief of counsel, resulted from the opinion entertained by the learned circuit judge that the invalidity of contracts made by unlicensed traders, as provided for in the act of 1875, above quoted, was a penalty imposed for a violation of that act; and that this act having been repealed by the act of 1878 (Acts of 1878, p. 23, § 5), the penalty could not afterwards be enforced.

The principle that the repeal of a statute imposing a penalty to be recovered by a civil action, or to be inflicted through a criminal proscution, puts an end to all proceedings, civil and criminal, intended to enforce the penalty, unless there be a saving clause in the repealing statute, is well settled, and has been fully recognized by this court. *Musgrove* v. *Vicksburg Railroad*

*Co.,* 50 Miss. 677. The foundation of the principle is, that, after the repeal of the statute, no law exists which provides for the penalty or authorizes its enforcement. The repeal of a statute is held to have the effect of expunging it from the statute-book as completely as if it had never existed, except as to rights which have vested under it. All actions pending at the time of the repeal, and all proceedings then uncompleted, which have for their foundation the repealed statute, fall with it ; only such as are fully completed or ripened into judgment are not affected by the repeal. It is said, as to pending actions, that they must fall with the repeal, because when the court comes to pronounce judgment it finds itself without a law authorizing a judgment to be rendered. *Allen* v. *Farrow,* 2 Bailey (S. C.), 584.

But these principles do not apply to this statute. For although the statutory provision for the invalidity of the contracts made by an unlicensed trader may be regarded to some extent as in the nature of a penalty or punishment on him for his illegal conduct, yet it is a punishment not inflicted through the instrumentality of any suit at law or equity. So far as it is a penalty or punishment, it is inflicted and enforced at the very moment the illegal act is consummated, without the intervention or aid of any legal proceedings whatever. The statute is self-executing. The violator of the statute becomes his own punisher, in the very act of the breach of its provisions. And hence a repeal of the statute, if we give the repeal a prospective operation only, can have no effect on that which was then done and consummated. We cannot give the provisions of a statute a retrospective force without express words to that effect; and it is not pretended that there are such words in this statute. In accordance with this view we find it well settled that the repeal of a statute making certain contracts void does not have the effect to validate such contracts. *Gilliland* v. *Phillips,* 1 S. C. 152; *Banchor* v. *Mansel,* 47 Maine, 58; *People* v. *Brooks,* 16 Cal. 11; *Hathaway* v. *Moran,* 44 Maine, 67 ; *Milne* v. *Huber,* 3 McLean, 212; *Roby* v. *West,* 4 N. H. 285 ; *Jaques* v. *Withy,* 1 H. Black. 65. But so much of the act of 1875 as is above set out is not repealed by the act of 1878 (Acts of 1878, p. 23, § 5) ; though the repeal of

the whole act seems to be within the express words of the repealing clause. The act of 1878 re-enacts in the same words that part of the act of 1875, above quoted, which invalidates contracts made by unlicensed traders.

There is some diversity in the authorities as to the effect of a repealing act upon so much of the repealed act as is re-enacted in the former. In Louisiana, it was held that the matter of the first statute contained in the repealing act was to be considered as having been once so effectually abrogated as to defeat all prosecutions for offences against the provision so contained which had been committed before the repeal. *State* v. *King*, 12 La. An. 593. And the same view seems to have been taken in Maine and New Hampshire. *Coffin* v. *Rich*, 45 Maine, 507; *Lisbon* v. *Clark*, 18 N. H. 234. But a contrary view is held in Wisconsin; *Laude* v. *Chicago Railway Co.*, 33 Wis. 640; *Fullerton* v. *Spring*, 3 Wis. 667; *Hurley* v. *Texas*, 20 Wis. 634; *State* v. *Gumber*, 37 Wis. 298, 302; and also in New Jersey; *Middleton* v. *New Jersey Railroad Co.*, 26 N. J. Eq. 269; *Randolph* v. *Larned*, 27 N. J. Eq. 557, 558, 562; and in Maryland; *Dashiell* v. *Baltimore*, 45 Md. 615; and in Georgia; *Ballin* v. *Ferst*, 55 Ga. 546; and in Massachusetts, *Wright* v. *Oakley*, 5 Met. 400, 406; and by the Supreme Court of the United States in *Steamship Co.* v. *Joliffe*, 2 Wall. 450, 458. We regard these last-named authorities as founded on the better reason. When a statute expressly repeals another, yet contains in it a provision of the former statute identical in language, — as is the case now before us, — or even identical in substance, it cannot be said that as to that provision there has been any repeal. The repeal of a statute puts an end to it, expunges it from the body of the laws of the State; and it is for this reason that the consequences before alluded to are held to flow from it. But it is manifest that such has not been the condition of the provision under consideration, and which was contained in the repealing act. As to that, there never has been any change. There has never been a single instant since its first enactment when it was not in full force and operation as the law of the State. The vice in the argument of the authorities we have rejected consists in attaching to the word "re-enactment" the sense of "revivor."

There can be no revivor unless there has been a previous death ; and there has not been for a single instant a cessation or suspension of the life and vigor of this provision since its first enactment, for the repealing statute went into operation the very instant of the repeal of the other; and until such operation there could be no repeal of the former, for that repeal is only effected by the vigor and operation of the latter. It is not proper legal language, therefore, to apply the word " repeal " to that part of a statute which is re-enacted in the statute which repeals the former.    The effect of such action is properly an uninterrupted continuation of the provision, — a translation of it in all its vigor and force, — not a destruction of it, and then a resurrection.    It, therefore, follows that the action of the court, in excluding the evidence showing the non-payment of the license-tax, was erroneous.

But it is insisted that, notwithstanding this error, the verdict was manifestly correct on the whole evidence, and that the judgment should be affirmed.    We cannot affirm a judgment when material and competent evidence was excluded from the jury, unless it is very clear that the verdict as rendered would be right if the excluded evidence had been admitted.    If the excluded evidence was pertinent to the only issue raised by the pleadings and evidence, then we must be satisfied that, if it had been admitted, it would not have been legally sufficient to authorize the jury to find a verdict different from the one they did find.    If the excluded evidence was pertinent to one of two issues submitted to the jury, and it is urged that the verdict is justified on the last issue, which issue involved the trial of a fact which is a full answer to the claim set up under the first issue, as is the case at bar, then we cannot affirm, unless we are satisfied that this last issue was fully and fairly tried before the jury, and that a contrary verdict on it should have been set aside by the court; or unless it should appear that evidence was introduced which in its nature was unimpeachable, as a record, and which in law would have compelled the rendition of the verdict sought to be affirmed.    In the last class is the case of *Bell* v. *Medford, ante,* 31, decided at this term.

It is contended that the plaintiff below rendered an account to the defendant covering the whole period during which she

was without a license, and that, of the credits to which the defendant was entitled, a sufficient amount was placed on the account so rendered to balance it, whereby the account was actually paid, so far as it was illegal. It is contended that this account is not only to be considered as a stated but also as a settled account. The evidence on this subject, as reported in the bill of exceptions, is very meagre. The whole of it amounts to no more than this, that on the cross-examination of the defendant he, in pursuance of a previous notice given him by the plaintiff, produced an account, the last item of which on the debit side is dated Sept. 13, 1877, and the last item of credit bears date December 5, following; and the credits seem to be equal to the debits. The defendant was asked no questions by either side as to the account, nor was any other witness examined in relation to it. Nothing in fact appears in reference to the account, except the mere fact that it was produced by the defendant in pursuance of a notice served on him by the plaintiff. It does not appear when the account was rendered, nor under what circumstances.

The action is based upon an account in favor of the plaintiff, commencing on the first day of March, 1877, and ending December 1, following. It embraces the whole period of the transactions between the parties, including that embraced in the account rendered. There is no item in it which indicates that an account had been rendered; but the items of charge, each being for the specific article sold, run regularly and without any interruption from March 1, to December 1, amounting in the aggregate to $616.77; and then follow credits to the amount of $340, without any dates. This account, as an open account, was sworn to by the plaintiff, under the statute, and filed with his declaration. The account claimed to be rendered, and therefore a stated account, commences with the beginning of the transaction between the parties, and the last item of debit in it is dated Sept. 13, 1877. It contains on the credit side the first six items of credit embraced in the account sued on, the sixth item of credit being dated, in the account rendered, December 5, 1877. By this it appears that this account was not rendered till after December 5, 1877. No explanation is given why this rendered account,

thus shown to have been made after the date of the last item of debit in the account sued on, should, as to its debit side, stop on September 13, leaving out items of charge against the defendant exceeding the sum of $200, which accrued before the date of the last item of credit in the account. It is clear that it is not an account of the whole of the transactions between the parties up to the date it was made out. If it were regarded as a stated account, it must be regarded also as showing the true balance, if any, due by the defendant at the date at least of the last item on either side of the account. This date has been shown to be December 5, 1877, and under this theory, if we regard the account as stated, it would show that nothing was due to the plaintiff, as the account is exactly balanced. In this view, the account rendered would not be the proof which would show the verdict to be clearly right, but the contrary. But under the rules of law the account thus rendered cannot be considered under the circumstances proved as a stated account.

A stated account is defined to be an agreement, after an examination of the accounts between the parties, that all the items are true, and the balance struck a just and true balance. *Stebbins* v. *Niles*, 25 Miss. 267, 348 ; *Davis* v. *Tiernan*, 2 How. 786, 804. But it is said that this agreement need not be express, but may be implied from circumstances ; and, among these circumstances, are the rendition of an account by one of the parties, and its retention without objection by the other. This rule which presumes the acquiescence of the party to whom an account was rendered, from his mere failure to object to it, needs some explanation in the state in which we find the authorities. The earliest mention we have been able to find of this rule is in *Sherman* v. *Sherman*, 2 Vern. 276, decided in the year 1692, where the rule is stated by Lord Hutchins thus : that " among merchants it is looked upon as an allowance of an account current, if the merchant that receives it does not object against it in a second or a third post." Lord Hardwicke in *Willis* v. *Jernegan*, 2 Atk. 251, spoke of the rule thus, " even where there are transactions, suppose between a merchant in England and a merchant beyond sea, and an account is transmitted here from the person who

is abroad, it is not the signing which will make it a stated
account, but the person to whom it is sent, keeping it by him
any length of time, without making any objection, which shall
bind him, and prevent his entering into an open account after-
wards." Chancellor Kent in *Murray* v. *Toland*, 3 Johns. Ch.
569, mentioned the rule in these words: "It has been often
held, that if a party receives a stated account from abroad,
and keeps it by him for any length of time (one case says
two years) without objection, he shall be bound by it;"
citing *Willis* v. *Jernegan, ubi supra,* and *Tickel* v. *Short,*
2 Ves. 239, in which last case, Lord Hardwicke said: "If
one merchant sends an account current to another in a
different country, on which a balance is made due to him-
self; the other keeps it by about two years without objec-
tion: the rule of this court and of merchants is, that it is
considered as a stated account." The Supreme Court of
the United States in *Freeland* v. *Heron*, 7 Cranch, 147,
spoke of the rule as "a rule of the Chancery Court and of
merchants," and defined it to be thus: "When one merchant
sends an account current to another residing in a different
country, between whom there are mutual dealings, and he
keeps it two years without making any objections, it shall
be deemed a stated account, and his silence and acquiescence
shall bind him, at least so far as to cast the *onus probandi* on
him." It is thus seen that, in its inception, the rule that the
reception of an account rendered, and the keeping of it for any
considerable time without objection, made it an account stated,
— that is, an account so admitted to be just and correct that
it relieved the party rendering it from the necessity of proving
it, and cast the burden on the party receiving it to show by
affirmative evidence that it was unjust, — was a rule of the
Chancery Court applied only in controversies between mer-
chants.

The rule has been extended further in some States, so as to
embrace transactions between other parties. In this State,
there has as yet been no recognition of it except in cases
between merchant and merchant, and when it has been referred
to it has been in that way. Thus in *McCall* v. *Nave*, 52 Miss.
494, 498, it was said that "assent" (to a stated account) "might

be implied from circumstances, such as the receipt by one merchant of an account from another without making objections;" and in *Stebbins* v. *Niles*, 25 Miss. 348, Smith, C. J., spoke of it as a rule in transactions between merchant and merchant. Greenleaf, in § 126, vol. 2, of his work on Evidence says an admission sufficient to create an account stated may be inferred, " if the account be sent to the debtor in a letter which is received, but not replied to in a reasonable time," but he refers as authority for this to § 197 of vol. 1, of his work. This last-named section states the rule thus, "among merchants it is regarded as the allowance of an account rendered, if it is not objected to without unnecessary delay." In Virginia in *Townes* v. *Birchett*, 12 Leigh, 173, the opinion of the majority of the court applying the rule proceeds on the assumption that both parties were merchants, though Judge Allen dissented upon the ground that this character of the parties was not shown. He said that he had not been able to find a single case, not between merchant and merchant, in which the rule had been applied. And this view was sustained by the Court of Appeals of Virginia in *Robertson* v. *Wright*, 17 Gratt. 534, 541. It is stated in Cowen and Hill's notes to Phillips on Evidence, note 191, that the rule is inapplicable except as to transactions between merchant and merchant.

In some of the late authorities the rule that the rendition of an account, and its retention without objection, makes it a stated account is applied to transactions between other parties than merchants. It has been so recognized in the following cases, among others: *Lockwood* v. *Thorne*, 11 N. Y. 170; *Stenton* v. *Jerome*, 54 N. Y. 480; *Case* v. *Hotchkiss*, 1 Abb. (N. Y.) 324; *Towsley* v. *Denison*, 45 Barb. 490; *Terry* v. *Sickles*, 13 Cal. 427; *White* v. *Hampton*, 10 Iowa, 238; *Tharp* v. *Tharp*, 15 Vt. 105; *White* v. *Campbell*, 25 Mich. 463; *Philips* v. *Belden*, 2 Edw. Ch. 1. On consideration of the authorities, we have concluded not to extend the rule, making the rendition of an account, and its retention without objection a stated account, beyond its original limits; viz., controversies between merchant and merchant.

On the other hand, we do not follow some of the authorities, which hold that such rendering and retention is no evidence of

the correctness of the account.  The rendering of an account and its retention without objection, as between other parties than merchants, is admissible to show an implied admission and acquiescence in its correctness.  What weight should be given to it is for the consideration of the jury, under all the circumstances of the case.  They may consider the character, as a business-man, of the party to whom the account was rendered — whether careful, accurate, and prompt in business matters, or the contrary ; his intelligence or the want of it ; his opportunities of examining the account, and of ascertaining whether it is correct ; his dependence on his creditor, or the contrary ; his confidence in the honesty and accuracy of the party who rendered the account ; the length of time of the retention ; the opportunities of making objections ; the course of previous dealings between the parties, and all other circumstances attending the rendering and retention of the account ; and from these determine the weight to be given to the evidence, in establishing its correctness.

*Judgment reversed and new trial granted.*