DRUG COMPANY OF PORTO RICO, INC., Plaintiff and Appellee-Appellant, *v.* JULIO PÉREZ AVILÉS, Defendant; and FRANCISCO MARÍA SUSONI, Defendant and Appellant-Appellee.

Nos. 5737 and 5724. Argued June 3, 1932.—Decided July 11, 1932.

*Lens & Susoni* for defendant-appellant.   *Pellón & Ayuso* for plaintiff-appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

This is an action of debt brought by Drug Company of Porto Rico, Inc., against Julio Pérez Avilés and Dr. Francisco María Susoni, wherein it is substantially alleged that the defendants entered into a contract with the plaintiff on March 2, 1927, whereby the plaintiff opened a credit account to the defendant Pérez Avilés up to the sum of $2,000, the bills to be paid within five months by drafts accepted by the latter, and the other defendant, Dr. Francisco María Susoni, became a solidary guarantor for the former up to the sum of $1,000; that as a result of said contract Pérez Avilés bought on credit from the plaintiff drugs and patent medicines worth $1,511.56, and that defendant Pérez Avilés had accepted the following drafts: No. 6163, dated February 29, 1928, for $652.40, payable on July 31, 1928; No. 7823, dated July 7, 1928, for $584.50, payable on November 30, 1928; No. 7994, dated August 9, 1928, for $258.41, payable on March 15, 1929; No. 8593, dated October 3, 1928, for $265.89, payable on February 28, 1929, the balance due on the latter draft being only $13.28.

The plaintiff further alleged that payment was demanded from the defendants, and that up to the present time the amount claimed in the complaint has not been paid.

After the default of the defendant Julio Pérez Avilés had been entered because of his failure to answer the complaint, a judgment against him was rendered for the sum claimed, with legal interest thereon from the filing of the complaint.

The defendant Dr. Susoni denied all the averments of the complaint, admitted the execution and perfecting of the contract entered into with the plaintiff, and alleged that in accordance therewith the plaintiff opened to the other defendant, Pérez Avilés, a credit in the form of a current account, making out invoices for the amount of goods sold which it charged to the current account of the other defendant, and periodically would issue drafts covering different bills, which drafts were to be paid by the other defendant five months after the date of issuance; that the said current account was continued until October 15, 1928, and that from March 2, 1927, when the contract was made, to October 15, 1928, when the same was terminated, the plaintiff had delivered to Pérez Avilés goods valued at $8,274.47, and until October 15, 1928, had received from Pérez Avilés payments amounting to $4,365.27, there remaining on that date a balance of $3,909.20 owed by Pérez Avilés to the plaintiff; that the payments made by Pérez Avilés to the plaintiff up to October 15, 1928, fully cover the sum guaranteed by defendant Dr. Susoni which amounted to $2,000 (*sic*), whereas the sums paid amounted to $4,365.27; that on January 15, 1929, the plaintiff and defendant Pérez Avilés terminated the said contract, without notifying or informing thereof the defendant Dr. Susoni, and Pérez Avilés paid to the plaintiff the sum of $2,397.64. It was specially urged that in the event the court should hold that the payments previously made did not cancel the guaranty, the sum of $2,397.64 exceeds the amount of such guaranty; that the sum claimed by the plaintiff represents an extension of credit granted by it to Pérez Avilés at its own risk and without any intervention or liability on the part of the other defendant.

The District Court of Arecibo rendered judgment in favor of plaintiff and adjudged the defendant Dr. Susoni to pay the sum of $1,000, without costs; and thereupon said defendant took the present appeal.

The defendant-appellant has assigned eight errors, which we will consider in the order in which they were argued.

The first and second assignments are based on the overruling by the court of the motions filed by said appellant on September 22, and November 6, 1930, demanding a detailed statement of account showing the various items of merchandise purchased by the defendant Julio Pérez Avilés from the plaintiff. The ground for the order of the lower court denying these motions was that the defendant Dr. Susoni had a remedy available to attain his purpose by means of a bill of particulars. The plaintiff contends, through its attorney, that the sum claimed in the complaint is represented by four drafts for different amounts drawn on the codefendant Julio Pérez Avilés who accepted them as correct, the account which previously existed between them thus becoming a liquidated and stated account; and therefore that it was neither necessary nor relevant that the plaintiff should furnish the appellant with any copy of the account, since the cause of action exercised is entirely distinct from the one existing before the account was liquidated and stated with the consent of the parties.

It was stipulated in the contract that the plaintiff would open a credit account to Julio Pérez Avilés up to the amount of $2,000, the bills to be paid by means of drafts duly accepted by Julio Pérez Avilés.

In spite of the fact that such drafts were accepted, the defendant claims that the court should have granted his motion for a copy of the account. However, it so happens that the defendant–appellant introduced in evidence a statement of account which had been furnished to him by the plaintiff on July 22, 1929. The complaint was filed on March 21, 1930.

744

Said statement of account sets forth in detail all the items purchased by Julio Pérez Avilés from the plaintiff. This account, which was rendered at the request of the appellant, does not appear to have been contested by him notwithstanding the time elapsed.

In *Rose* v. *Bradley*, 91 Wis. 619, 65 N.W. 509, 510, the Supreme Court of Wisconsin expressed itself as follows:

"The mere making out by one person of his account with another, with whom he has had business transactions, and the sending of the same to him, and its retention by such other, without objection does not necessarily constitute a settlement or account stated. If such other keeps the account, and fails to object within a reasonable time, the facts raise a presumption or inference of acquiescence. That is all. Such presumption or inference is more or less strong according to circumstances. The neglect to return or object may be for such a length of time as to render such presumption conclusive on the question of acquiescence, so as to make an account stated. The mere retention of the account, however, without objection, is evidence of acquiescence only."

In *White* v. *Hampton*, 10 Iowa 238, it was said:

"What will amount to a stated account from the presumed acquiescence of the parties arising from lapse of time, and their failure to object to the same within a reasonable period, must depend upon circumstances to be judged of by the nature of the transaction and the habits of business and course of trade." See *Hollenbeck* v. *Ristine*, 67 Am. St. R. 306, 309.

Where an account has been rendered, and no objection is made thereto after a reasonable time allowed for its examination, the same should be considered as *prima facie* correct. This presumption may be overcome by proof. *First National Bank* v. *Allen*, 100 Ala. 476, 46 Am. St. R. 80.

In the instant case the lower court allowed the defendant, during the introduction of his evidence, to examine at length the agent of the plaintiff, Angel M. Méndez, in regard to the current account. The appellant never challenged the correctness of this account. He made no objection to any of its

items, and in contending that he is not liable for the sum claimed from him in the complaint, he takes as a basis the detailed statement appearing in said account as to the items of goods purchased by Julio Pérez Avilés from the plaintiff. It having been established that the appellant had the account in his possession for eight months without making any objection to its correctness, that he introduced it in evidence, and that he has used the same for raising questions of law which in his judgment relieve him from liability, we are of the opinion that the presumption must prevail that the appellant has admitted the correctness of the account, since no proof whatever has been introduced to overcome such presumption. That being so, and as the appellant had in his possession the information applied for by him, he can not consider himself prejudiced by the action of the court in overruling his motion or by the refusal of the plaintiff to reproduce the account which it had furnished to him eight months before.

Let us now consider the third and fourth assignments, which we transcribe below:

"3. The lower court flagrantly erred in holding that after the sum of $4,365.27 had been paid by Pérez Avilés and until October 15, 1928, the guarantor Francisco M. Susoni, that is, the defendant-appellant, was liable under the terms of the contract of guaranty notwithstanding his liability had been limited to $1,000 on a credit not exceeding $2,000.

"4. The lower court also erred in not holding that the payment of the sum of $2,397.64 made by Pérez Avilés on January 15, 1929, when the contract was terminated, did not fully cancel the guaranty furnished in accordance with the aforesaid contract."

The above assignments raise the fundamental question to be decided in determining whether or not the defendant is liable for the payment of the sum claimed by the plaintiff. The lower court held as proved each and every allegation of the complaint, and it wrote a careful opinion in which it examined the terms of the guaranty given by the defendant–appellant and stated its views in regard to the effects thereof. The

agreement made between the plaintiff corporation, Julio Pérez Avilés, and the defendant-appellant reads as follows:

"Arecibo, P. R., March 2, 1927. Contract entered into between Julio Pérez Avilés, a druggist of Arecibo, and Drug Company of Porto Rico, Inc., a corporation organized under the laws of the State of New York, and Dr. Francisco María Susoni.

"It is agreed that Drug Company of Porto Rico, Inc., shall open a credit account to Julio Pérez Avilés up to the sum of $2,000, the bills to be paid by means of drafts duly accepted by Julio Pérez Avilés and maturing five months after the date of invoice.

"It is agreed that this credit account shall remain effective for three years, provided that all the conditions stipulated in this contract shall be complied with by Julio Pérez Avilés.

"In consideration of the foregoing and of the giving of said credit by the Drug Company of Porto Rico, Inc., Dr. Francisco María Susoni guarantees the payment of any sum not exceeding one thousand dollars ($1,000). Credit for the remaining one thousand dollars ($1,000) shall be extended by the Drug Co. of Porto Rico, Inc., with no other security than that of Julio Pérez Avilés for the drugs that may be ordered by the latter, for which Dr. Francisco María Susoni constitutes himself as surety and guarantor up to the sum of one thousand dollars ($1,000) in favor of the Drug Company of Porto Rico, Inc., its successors or assigns, of any sum that at any time may be owing by said Julio Pérez Avilés to the Drug Company of Porto Rico not exceeding one thousand ($1,000), such guaranty to remain in force until written notice shall have been given of its cancellation, it being agreed that Dr. Francisco María Susoni expressly waives the benefit of exhaustion of the principal's property and the right to notice of any extension that the Drug Company of Porto Rico, Inc., may grant to Julio Pérez Avilés for the payment of any sum due at any time not exceeding one thousand dollars ($1,000); and that the guaranty up to the sum of one thousand dollars ($1,000) is constituted *in solidum* and jointly with Julio Pérez Avilés. The Drug Company of Porto Rico, Inc., through its agent Arturo Méndez, binds itself to maintain this credit for three years provided that each of the drafts which may be drawn on Julio Pérez Avilés shall be paid at its maturity, that is, five months after the date thereof; and to maintain said credit up to the amount of two thousand dollars ($2,000): one thousand dollars ($1,000) secured in the manner aforesaid by said Francisco María Susoni, and one thousand dollars, ($1,000) by Julio Pérez Avilés. (Sgd.)

Drug Co. of Porto Rico. Per A. Méndez. (Sgd.) Julio Pérez Avilés. (Sgd.) Dr. F. M. Susoni.''

Briefly, Dr. Susoni maintains that his guaranty was for a sum not exceeding $1,000 for three years, and that inasmuch as the plaintiff granted credit to the other defendant in excess of the guaranteed amount, the payments made by Pérez Avilés relieved him from the obligation he had contracted, since said payments totaled $4,365.27, on October 15, 1928, and Pérez Avilés had moreover paid to the plaintiff $2,397.64 on January 15, 1929.

According to the terms of the agreement the obligation contracted by the defendant is limited as to amount, up to the sum of $1,000, and as to time, to a period of three years. The invoices were to be paid by means of drafts duly accepted by Pérez Avilés. The guaranty is a solidary one and Dr. Susoni constituted himself as surety and guarantor up to the sum of $1,000 for any amount that might be owing at any time by Pérez Avilés to the plaintiff.

In support of his contention that he is not liable for the sum claimed from him, the defendant-appellant invokes the doctrine laid down in *Brunet, Sáenz & Co.* v. *Aponte et al.,* 33 P.R.R. 509. The scope of that doctrine has been duly explained in the case of *Succrs. of Gamarra, S. en C.* v. *Navarro,* 40 P.R.R. 716, and in that of *West India Oil Co.* v. *Ramírez,* (*ante* p. 619), recently decided by this Court. In the *Brunet* case, *supra,* on rehearing,* this Court declared that there is no special rule whereby the question of whether a guaranty is continuing or limited can be determined, and that very little aid is to be derived from the adjudged cases, since they turn upon the peculiar phraseology of the particular guaranty. The peculiar phraseology of the guaranty executed by Susoni shows that he bound himself *in solidum,* for three years, to pay any sum up to $1,000 that at any time might be owed by Pérez Avilés to the plaintiff. In *West India Oil Co.* v.

---

NOTE: See 33 *Decisiones de Puerto Rico,* pp. 530, 538.

*R'amírez, supra,* this Court, speaking through Mr. Justice Aldrey, said:

"The facts in the instant case are the same as those in *Succrs. of Gamarra, S. en C.,* v. *Navarro, supra,* for in both cases the bond has no definite time, an amount was fixed as the limit of liability, payments were made by the principal debtor in excess of the limit of the amount so fixed, and in both of them the sureties constituted themselves into principal obligors.

"The cases cited by the court below differ from the one at bar and that of Gamarra, in that in the former cases, the guarantors constituted themselves into the mere sureties, and in the other two, the obligation was subscribed by them as sureties and principal obligors."

In the case at bar the sales made by the plaintiff to Pérez Avilés took place within the three years stipulated in the contract. Now, in view of the terms of the contract and the solidary character of the guaranty, what is the position occupied by the defendant guarantor with respect to the plaintiff creditor? Commenting on section 1831 of the Spanish Civil Code, equivalent to section 1730 of our Civil Code, 1930 ed., which deals with the cases where it is not necessary to exhaust the debtor's property, Manresa says:

"The second of the cases stated in the section is that in which the surety has bound himself *in solidum* with the debtor, and no doubt can arise either as to its applicability and justification, for in such a case, by reason of the very terms in which the guaranty is contracted, its character changes, since from a subsidiary obligation it turns into a solidary one, the surety becoming thereby a true codebtor, with the same status as the principal debtor. Said exception is also recognized in the second paragraph of section 1822, which, as it will be remembered, provided that in such case, instead of following the principles and rules peculiar to suretyship contracts, the provisions of Section IV, Chapter I, Title 1, of this Book, relating to solidary obligations, shall be observed. Therefore, since the surety ceases as such and becomes a principal debtor, he can not invoke the customary benefit which he has waived when he bound himself *in solidum* with the principal." Commentaries on the Civil Code, vol. 12, p. 258.

In *Succrs. of Gamarra, S. en C.* v. *Navarro, supra,* citation is made, with an explanation of its scope, of the judgment rendered by the Supreme Court of Spain on December 29, 1898, in which it was held that "as suretyship consists in the obligation to perform some engagement contracted by a third person in case the latter should fail to do so, it would be consistent for the surety to bind himself *in solidum* with the principal debtor, *without the surety contract losing thereby its proper character.*"

Manresa seems to explain the effect of this judgment when he says, in commenting thereon, that if from the terms of the contract or from the expression of the will of the third person it appears that it was not the latter's intention to become a principal debtor but merely to constitute himself as surety, although binding himself *in solidum,* the claim may be enforced against him by reason of such solidarity without first exhausting the property of the principal debtor; but once the payment is made, he shall have all the rights pertaining to the surety and shall not be subjected to the restriction attaching to a codebtor *in solidum.*

The liability of a surety *in solidum* towards the creditor is the same as that of the principal; but the surety contract preserves its own character as regards the relation between the surety and the principal. The surety retains his rights by reason of the security, while the codebtor has no other rights than those granted to him by Article Fourth, Chapter III, Title I of Book IV of the Civil Code. As regards the creditor a solidary surety is a principal obligor who can not invoke the benefit of division and exhaustion of the principal's property, and who is bound to perform the contract fully from the moment the principal fails to fulfill the same.

It is true that according to the statement of account furnished by the plaintiff to the defendant Dr. Susoni, the goods sold to Pérez Avilés at times greatly exceeded the sum of $2,000, and that in accordance with the contract the plaintiff undertook to extend a credit amounting to $2,000 to the code-

fendant Pérez Avilés; but it is no less true that the defendant-appellant bound himself to pay up to $1,000 of any sum that at any time might be owed by Pérez Avilés to the plaintiff. In view of the terms of the contract and of the solidary character of the guaranty, we are of the opinion that Dr. Susoni is bound to pay to the plaintiff the sum claimed in the complaint.

The fifth error assigned is that the court did not allow the defendant-appellant to testify as to the transaction re-presented by the drafts introduced in evidence, and as to why and by which banking institution they were presented for payment. During the testimony of Angel M. Méndez, while the above drafts were being identified for their introduction in evidence, and before they were admitted, counsel for the appellant asked which were the goods covered by the said drafts. The plaintiff objected to the question. The court sustained the objection on the ground that the defendant could, when the evidence came for identification, cross-examine in regard to this particular but not as to the transaction itself, and reserved to the defendant the right to do so on cross-examination. The appellant took an exception and later on, on cross-examination, he examined the witness at length regarding the transaction and the very matter which had previously given rise to his objection. This assignment is without merit.

The sixth and seventh assignments are based on the action of the court in admitting in evidence the judgment by default entered against the codefendant Pérez Avilés and the notice thereof to the party in interest. Both of these assignments are dismissed.

The last error assigned is that the court admitted in evidence four drafts, three of which appear as having been accepted by Julio Pérez Avilés and another by J. Pérez Avilés, without any of them bearing the date of their acceptance. This assignment is also dismissed.

The plaintiff took a separate appeal—which forms part of this case—from that part of the judgment relating to the costs and interest claimed, and he assigns as error the court's failure to adjudge the defendant to pay the costs and legal interest from the commencement of this action. We think that the lower court in rendering judgment without special imposition of costs, took into account the legal questions involved in the present litigation and the confusion that might arise from the interpretation of a surety contract, by attributing to a solidary guaranty restrictions which would properly apply only to an ordinary security. We are of the opinion that the lower court took this circumstance into account so as not to consider the defendant an obstinate litigant, and we do not feel ourselves justified in reversing its finding.

As regards the legal interest claimed, we think that the defendant should have been adjudged to pay the same from the date of the filing of the complaint.

The judgment appealed from must be affirmed, with the only modification that the defendant be adjudged to pay legal interest from the filing of the complaint.

Mr. Justice Wolf concurs in the judgment and in the opinion, except as to the part thereof relating to the case of *West India Oil Co.* v. *Ramírez, supra,* on the grounds set forth in his concurring opinion in said case.