AMERICAN FIRE INSURANCE CO. *v.* FIRST NATIONAL BANK ET AL.

1. FIRE INSURANCE.    *Privilege tax law.    Policy a contract within same.* Code 1892, §§ 3390, 3401.

    A policy of insurance upon the stock of goods of a merchant is a contract in reference to his business, within the meaning of § 3401, code 1892, which avoids all contracts made with those who fail to comply with the privilege tax law in reference to the business carried on in disregard thereof.    *Pollard* v. *Insurance Co.*, 63 Miss., 244; *Insurance Co.* v. *Searles, ante,* cited.

2. SAME.    *Insufficient privilege tax.    Code* 1892, §§ 3390, 3401.

    When a merchant's stock of goods varies during the year from $2,000 or $2,500 to $7,500 in amount, and he pays a privilege tax of $15 only, and procures the license required by § 3390, code 1892, where the stock sometimes exceeds $2,000, but never $3,500, instead of paying $30, and procuring the license required by said statute where the stock sometimes exceeds $7,000, but never $10,000, in amount, he is guilty of a violation of said statute. and a fire insurance policy on the stock taken out while he continues to do business under such insufficient license is void under § 3401, code 1892.

3. SAME. *Payment of tax during month. License antedated. Retroactive effect on contracts.* Code 1892, § 3408.

Under § 3408. code 1892, requiring the tax collector, where a privilege tax is paid during any month, but after the first day thereof, to date the license as of that day, and providing that it "shall be good for one year from that date," a payment at any time during the month has a retroactive effect, and a contract made in reference to the business of the taxpayer during the month of the issuance of the license, is valid, though the tax is not in fact paid until after the contract is made.

4. FORM ATTACHED TO POLICY. *Immaterial change of same. No new contract created.*

Where a fire insurance company, after issuing a policy, procures the same from the insured, and changes the following form attached thereto: "It is understood and agreed that this building is to be occupied as a warehouse only during the continuance of this policy," by substituting therefor another form, which, after describing the property exactly as the previous form had done, contained the following: "And used solely for warehouse purposes," the change is immaterial, and no new contract is created.

5. WAIVER. *Additional insurance. Notice to agent.*

The defense that a fire policy is void because of additional insurance, without defendant's consent, cannot be availed of where the defendant company, with knowledge by its agent of the breach of the condition, through such agent, procured the policy, and, after changing the form attached thereto, returned it to the insured as a valid obligation, such action being a waiver of the breach of condition. *Association* v. *Bowdre*, 67 Miss., 620; *Insurance Co.* v. *Sheffy,* 71 *Ib.*, 919; *Insurance Co.* v. *Scales, Ib.*, 975; *Insurance Co.* v. *Gibson,* 72 Miss., 58, cited.

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

This action was brought by First National Bank of Vicksburg and C. J. Searles Co., a trading corporation doing a mercantile business in the city of Vicksburg, against appellant, to recover upon a policy of insurance for $2,500 to C. J. Searles Co., issued March 3, 1894, upon its stock of goods, which was destroyed by fire June 15, 1894. The policy provided that "any loss that may be ascertained and proven due the assured

shall be payable.to the First National Bank, as its interests may appear at the time of the fire, and the remainder, if any, to the assured.'' The defenses relied on are: (1) That Searles Co. had not paid a sufficient privilege tax; (2) that the policy was void, because at the time of its issuance there was additional insurance without the consent of the insurance company. The material facts, as applied to these defenses, are these: Searles Co. took out its privilege tax license on June 1, 1893, paying therefor $15, and, about June 1, 1894, the sheriff of Warren county sent them a like license for 1894; and after the fire, and after finding there was an excess of stock over $3,500, on advice, this license was returned, and one was procured for $30. The stock of Searles Co., just prior to the commencement of the fiscal year 1893, and during the year following June 1, 1893, at times largely exceeded $3,500. On March 13, 1893, it inventoried $9,330.51; on April 1, 1894, $8,282.12; on June 15, 1894, at the time of the loss, and according to proof of loss by Mr. Searles, president of Searles Co., $8,956.77. On March 3, 1894, the date of the policy, Mr. Griffith, the president of appellee bank, fixed the stock at $3,465. Mr. Searles could not say whether, on March 3, 1894, the stock exceeded $3,500, or equaled $7,500. He stated that a firm engaged in that business could not do a business of any magnitude with a stock of $2,500; ''that the stock might run down to that amount, but, as a general thing, he had to have a pretty healthy stock to handle the line of business'' that he had; that he carried $7,500 of insurance; that he did not know exactly whether he had enough stock, at the time the policy was issued, to cover $7,500. ''Our custom was this: The stock of goods would vary, and we carried a general line of insurance of $7,500. Sometimes we would have that amount of goods in the warehouse, and then, again, it would run down to $2,500 or $2,000.''

At the time of the issuance of this policy, there was $5,000 of other insurance on this property, without the knowledge of

appellant. On June 4, 1894, appellant sent to the First National Bank for this policy, as it desired to change the "form" attached to the policy, which described the property insured, and its location, and also contained this clause: "It is understood and agreed that this building is to be occupied as a warehouse only, during the continuance of this policy." Mr. Griffith, the president of the bank, not knowing which of the policies of the Searles Company was wanted, sent to appellant's agent this policy, with the three other policies covering the additional insurance. Appellant's agent changed the form attached, by substituting another form, identical in language with the original form, except that the above clause was omitted, and, in lieu thereof, after the description of the house, these words were inserted, viz., "and used solely for warehouse purposes." The four policies were then returned to the bank. Mr. Griffith testified that they were returned by appellant's agent, Mr. Buck, but that he did not know that Buck knew of the contents of the other policies, although the property insured, name of company, etc., were indorsed on each policy. Mr. Buck said that he did not return the policy in person, and that he did not know of the additional insurance until after the fire; that, if he had these policies in his hands, he would almost certainly have ascertained what they insured, and that he would have looked at them. It does not appear, from this record, that the business of C. J. Searles Company came to an end with the fire destroying the stock of goods. The peremptory instruction for appellant was refused. The appellee had a verdict and judgment, from which this appeal is prosecuted.

*Booth & Anderson*, for the appellant.

1. The evidence clearly shows that, at the time the policy sued on was issued, the C. J. Searles Co. was doing business without having paid a sufficient privilege tax, and that the policy was, therefore, void. Code 1892, § 3390; *Pollard* v. *Phœnix Ins. Co.*, 63 Miss., 244. The case of *Sneed* v. *Assurance*

*Co.*, 72 Miss., 51, has no application to the present contro-
versy, for the reason that the C. J. Searles Co. had, from the
time it embarked in business to the date of the fire, carried a
stock in excess of the amount covered by its license.

The court below, in the fourth instruction given for the
plaintiff, told the jury that the defendant had the burden of
proving that the C. J. Searles Co. did not have a sufficient
privilege tax license on the day the policy issued. This was
clearly erroneous, in view of the evidence before the jury, show-
ing, by the amount of stock on hand at different times before
and after that day, that the average largely exceeded the amount
covered by the license. That was putting upon the defendant the
burden of proving an exception to the rule on that particular day.

On June 4, 1894, appellant took the policy sued on and sub-
stituted one written form for another. At that time the C. J.
Searles Co. had no privilege license at all. The appellees claim
that this change constituted a new contract, and that, the privi-
lege license having been taken out during the same month, al-
though it was taken out after the fire, and dated the first of the
month in which it was taken out, was sufficient to make valid
the contract, and the requirements of the law were met. The
difficulty of maintaining this defense lies chiefly in the fact that
the change in the policy was immaterial, being one of form
merely, but the same result would follow had its change been
a material one. The provision of the statute that such li-
censes should be dated on the first day of the month of their
issuance and be good for one year from that date, was designed
solely for the convenience of the collector, and has no influence
upon the rights of the licensee. See Code 1892, § 3408; act of
1875, Acts, pp. 9 and 10; Code 1871, § 1750. When the new
license was issued to the C. J. Searles Co., its stock had been
destroyed, and it had gone out of business.

2. The warehouse book should have been kept in "a fire-
proof safe," under the requirements of the policy. It was a
book in which was kept a full record of the articles of mer-

chandise on hand, for it showed what came into the warehouse and what went out, and the values of the articles of merchandise were susceptible of proof. It was a very important book, and the failure to preserve and produce it works a forfeiture of all right under the policy.

3. There was also a forfeiture by reason of the additional insurance taken out without a previous agreement authorizing it indorsed upon the policy. The evidence does not sustain the contention that the appellant's agent, Buck, had notice. *Insurance Co.* v. *Scales*, 71 Miss., 975. If he had received notice, the result would not have been altered, for, by the terms of the policy, he was expressly denied all authority to waive such a condition save by indorsement in writing on the policy, and the policy contains no such indorsement. None of the cases opposed to this view will be found to have involved the construction of a condition altogether similar to that of the policy sued on. See *Insurance Co.* v. *Sheffy*, 71 Miss., 919; *Cleaver* v. *Insurance Co.*, 32 N. W. Rep., 660; *Zimmerman* v. *Insurance Co.*, 42 N. W. Rep., 462; *Gould* v. *Insurance Co.*, 51 N. W. Rep., 454; *Quinlan* v. *Insurance Co.*, 31 N. E. Rep., 31; *Walsh* v. *Insurance Co.*, 73 N. Y., 10; *Marvin* v. *Insurance Co.*, 85 N. Y., 278; *Porter* v. *Insurance Co.*, 35 N. E. Rep., 678.

*Miller, Smith & Hirsh*, for the appellees.

1. It was a controverted question, decided favorably to appellee by the jury, whether there was over $3,500 of stock on hand on the third of March, 1894, when the policy was issued, and the finding should not be disturbed. The criticism of the fourth instruction given for the plaintiff is ineffectual. The burden of proof was on the defendant, who plead affirmatively the fact that when the contract of insurance was entered into the excess existed. *Sneed* v. *Assurance Co.*, 72 Miss., 51.

2. A new policy was issued by the change of the "form," on June 4, 1894, and a sufficient privilege tax license having

been taken out during that month, though after the fire, gave validity to all contracts made in the month and covered by this policy.    Code of 1892, § 3408.

3. This suit was brought by the First National Bank, to whom the policy was made payable as its interest might appear, and, it appearing that the bank owns the entire interest in the policy, it is not affected by the failure of the C. J. Searles Co. to pay a sufficient privilege tax, under § 3401, code of 1892, which avoids the contracts of a delinquent "only so far as such person may base any claim upon them." The whole of the recovery will go to the bank and leave an unpaid balance on its debt. The insured is basing no claim on the contract. The statute, being highly penal, should not be so construed as to extend it to a case beyond the plain import of its terms.    Sutherland on Stat. Con., § 208, 350, 359.

4. The question of whether or not the company knew of the additional insurance when it changed the policy, on June 4, 1894, was determined by the jury adversely to the appellant, and, the evidence having warranted their verdict, it should stand. It is not so much a question of authority in the agent, Buck, to waive conditions, as it is one of estoppel on the company to set up a breach of conditions when they knew the facts prior to issuance of the policy. *Rivara* v. *Insurance Co.*, 62 Miss., 728. In this case and numerous other cases an agent authorized to issue policies is held to represent the company and his acts and knowledge treated as those of the company. 2 Woods' Fire Ins., § 525, p. 1148; *Ib.*, § 526, p. 1161; *Insurance Co.* v. *Sheffy*, 71 Miss., 921. It is now generally held that no indorsement of consent on the policy that additional insurance may be carried is necessary, notwithstanding provisions in the policy requiring it. And, moreover, that a knowledge by the company (and the agent is the company) is sufficient to operate as a waiver, or, more properly speaking, as an estoppel.    2 Woods on Fire Ins., §§ 392, 393, pp. 802,

804; 1 May on Insurance, § 133*a*; 2 *Ib.*, §§ 365, 370, 371, 372, 372*a*, 372*b*, 372*c*.

5. The action of the appellant in requiring the C. J. Searles Co., to produce proofs, etc., and go to the trouble and expense of furnishing information upon the faith of a payment of the loss, itself operated as an estoppel against the defense of additional insurance. *Webster* v. *Insurance Co.*, 36 Wis., 67; *Cleaver* v. *Insurance Co.*, 71 Mich., 414; *Carpenter* v. *Insurance Co.*, *Ib.*, 635; *Home Ins. Co.* v. *Marple*, 27 N. E. Rep., 633; Clements' Fire Ins. Dig., 219; 2 Woods' Fire Ins., 1161.

MARCELLUS GREEN, Special Judge, delivered the opinion of the court.

Under the revenue laws of this state (code 1892, § 3390), an annual privilege tax, payable in advance, is imposed upon the occupation of a merchant. The amount of the tax varies, in accordance with the value of the stock of goods to be carried during the year, from $2.50 to $150. "Where the stock sometimes exceeds $2,000, but never $3,500 dollars," the tax is $15; and where the stock sometimes exceeds $7,000, but never $10,-000, the amount of the tax is $30. Upon application for the license, which issues upon the payment of the required tax, the applicant is required to make an affidavit, which "must state the largest amount which the party expects to have on hand during the year for which license is desired." Code, § 3410. For the enforcement of the collection of this tax, in addition to the usual remedy by distress and sale, highly penal remedies are prescribed, whereby "any person who shall receive any of the privileges enumerated, . . . without first paying the tax and procuring license," shall be guilty of a misdemeanor, "and all contracts made with any person who shall violate the provisions of this chapter in reference to the business carried on in disregard thereof, shall be null and void so far only as such persons may base any claim upon them, and a suit shall not be maintainable in favor of any such person on any such

contract." Code 1892, § 3401. A policy of insurance upon the stock of goods of a merchant is a contract with reference to his business. *Pollard* v. *Insurance Co.*, 63 Miss., 244; *Insurance Co.* v. *Searles* (Miss.), *ante*, p. 1. The undisputed facts are that, a short time prior to June 1, 1893, which was the date of the license of C. J. Searles Co. for the year during which the policy sued on was taken out, the stock amounted to $9,330.51; on April 1, 1894, it amounted to $8,282.12, and on June 15, 1894, to $8,956.77. The president of C. J. Searles Co. could not fix the amount of stock on hand on March 3, 1894, the date of the policy, nor could he state whether it exceeded $3,500 or equaled $7,500 at that date. He stated that a firm engaged in the character of business his company was engaged in could not do a business of any magnitude with a stock of $2,500; that the stock might run down to less than that, but, as a general thing, he had to have a "pretty healthy stock" to handle the line of business that he had, "and our custom was this: The stock of goods would vary, and we carried a general line of insurance of $7,500. Sometimes we would have that amount of goods in the warehouse, and, then again, it would run down to $2,500 or $2,000." It thus appears that C. J. Searles Co., with the knowledge that its stock of goods would vary from $2,000 or $2,500 to $7,000, and intending that the stock should vary between those sums, paid a privilege tax of $15, and took out a license on a stock "where the stock sometimes exceeds $2,000, but never $3,500. The required affidavit, if it had been made, would have fixed $7,500 as the basis of taxation, and thereby $30 would have been exacted, instead of $15, as the tax to be paid. It is clear that, in so doing, C. J. Searles Co. knowingly and intentionally "exercised one of the privileges enumerated, . . . without first paying the tax and procuring license, as required," and, hence, the business so carried on was, and continued to be, during that year, a violation of the provisions of that chapter of the code, and this contract of insurance, made in reference to that

business, and while it was being thus conducted in violation of law, was thereby rendered void.

It is contended, however, that, after the year had expired during which an insufficient privilege tax was paid, and during the month of June, 1894, C. J. Searles Co. paid a sufficient privilege tax for the year commencing on June 1, 1894, and that, during that month, this policy was made a new contract of insurance by the change made in the "form" attached by the company, and that, as this change was made after June 1, 1894, the policy was thenceforth unaffected by the former invalidity. While § 3401 of the code requires that the party shall first pay the tax and obtain a license before exercising any of the privileges enumerated, and that a failure so to do will incur the penalties named, § 3408 requires the tax collector to date the privilege license from the first day of the month of its issuance, and it declares that such license "shall be good for one year from that date." Construing these two sections of the chapter together, and in the light of the rule that such statutes must be strictly construed, we are of opinion that the payment of the privilege tax at any time during the month of the issuance of the license will have a retroactive effect, and that all contracts made in reference to the business during the month of issuance of said license will be valid. The payment, therefore, of a sufficient privilege tax during the month of June, 1894, made effective and enforceable all contracts made by C. J. Searles Co. during that month.

The fact relied on to create a new contract of insurance after June 1, 1894, was the substitution by the appellant of the form now attached, on June 4, 1894, for the form originally attached. The words of the substituted form are identical with those of the original form, except in an immaterial particular. The change was one of verbiage only. The legal import of both forms is the same, and the contract, in legal effect, remained constant. There was no new contract, therefore, made after June 1, 1894, and the invalidity inherent in the policy at its creation, adhered

to it, and was not affected by the subsequent payment of a sufficient privilege tax.

The remaining question for decision is whether the admitted breach of the contract of the policy forbidding additional insurance was waived by the change of the form attached, at the request of the appellant, and a return of the policy to the bank, with knowledge thereby of the agent, of such additional insurance. The evidence conflicts as to whether appellant's agent know of the additional insurance at the time of the change of the form and the return of the policy to the bank, but the verdict finds that the agent had such knowledge. Whatever may be the rule elsewhere, it is settled in this state that the clause in policies of insurance limiting the power of agents or officers of the insurance company to waive breaches of the condition of the policy, except in a certain manner, is inoperative, where a waiver has been made other than that specified in the policy. *Association* v. *Matthews*, 65 Miss., 301; *Insurance Co.* v. *Bowdre*, 67 Miss., 620; *Insurance Co.* v. *Sheffy*, 71 Miss., 919; *Insurance Co.* v. *Scales*, 71 Miss., 975; *Insurance Co.* v. *Gibson*, 72 Miss., 58. If, with the knowledge of the breach of this condition by the agent, the appellant, through the agent, requested and made a change in the form attached, and then returned the policy, as one of binding obligation, to the bank, the appellant cannot now complain of such precedent breach of that condition. The foregoing principles can be applied to the pleadings and the instructions in the further conduct of this cause, and hence it is unnecessary to refer to them in detail. It follows, from the case made by this record, that it was error to refuse the peremptory instruction asked by appellant; wherefore, the judgment is

*Reversed, and the cause remanded for a new trial.*