WILLIAM C. SULLIVAN v. WILLIAM E. AMMONS.

[48 South. 244.]

PRIVILEGE TAXES. *Failure to pay. Contracts. Suits on. Maintainance forbidden. Repeal of statute. Laws* 1875, *ch.* 1, *p.* 10, *sec.* 5. *Code* 1880, § 589. *Code* 1892, § 3401. *Amendatory acts. Code* 1906, § 3894.

Under Laws 1875, ch. 1, p. 10, sec. 5, contracts made by a person carrying on business without paying the privilege tax imposed thereon were utterly void and a repeal of the statute did not authorize a recovery by the guilty party on such void contracts. *Anding v. Levy*, 58 Miss. 51; *Decell v. Lewenthal*, 57 Miss. 331; but under Code 1880, § 589, and Code 1892, § 3401, making such contracts illegal only so far as the guilty party may base a claim on them, and all statutes amendatory of these code sections containing a like provision, such contracts were merely non-enforceable as a matter of remedy while the statutes were operative, a defendant had no vested right in a defense based on them and the defense was abrogated by Code 1906, § 3894, providing a fine and imprisonment only as a punishment for carrying on business without paying the privilege tax imposed thereon.

FROM the circuit court of, second district, Tallahatchie county.

HON. SAMUEL C. COOK, Judge.

Ammons, appellee, was plaintiff in the court below; Sullivan, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Boatner & May* and *R. L. Cannon,* for appellant.

While it is true that the statute precluding recovery for failure to procure a privilege tax license was repealed by the Code of 1906, appellant relies on sec. 4 of said Code saving to him the benefit of existing rights and defenses, and on former decisions of this court, cited herein.

The non-payment of the privilege tax as alleged in defendant's plea No. 3, which were demurred to and by the court held bad on demurrer, constituted a defense, or bar, to any suit for the enforcement of plaintiff's claim for merchandise sold during such delinquency. This bar created by statute, Code 1892, § 3401, Laws 1904, p. 82, § 107, was absolute, and was not taken from defendant by the fact that Code 1906, in failing to re-enact the penal clause contained in said statutes thereby repealed it, even conceding for the sake of argument that the defense is not within the saving clause of § 4, Code 1906. *Anding v. Levy,* 57 Miss. 51; *Decell v. Lewenthall,* 57 Miss. 331.

All debts contracted to be paid to a creditor, engaged in a business requiring payment of a privilege tax during the time of his delinquency for such tax are void; and no transmutation in the form of renewal of such debts can save the bar of the statute. *Puckett v. Fore,* 77 Miss. 391, 27 South. 381; Code 1906, § 4, which is the same as Code 1892, § 4, expressly reserves the bar; *Goodman v. Loan Association,* 71 Miss. 310, 14 South. 146; *Lemonious v. Mayer,* 71 Miss. 514, 14 South. 33.

*Mayes & Longstreet* and *A. H. Stephen,* for appellee.

We submit that if this were an original question, and not obscured by earlier decisions of this court, the conclusion of his Honor below was correct, and that his judgment should be affirmed would be quite clear. We shall endeavor to show that those earlier decisions are distinguishable from this case, and that notwithstanding them, this case should be affirmed. In fact, the essential principle for which we contend, and which being recognized, leads to the affirmance of this case, was by necessary implication recognized and asserted by this court in the case of *Insurance Company v. Bank,* 73 Miss. 469, on page 478.

Let this court get the facts of the case, and its legal attitude, straight. This case does not arise under the Act of 1875, but under the new and amended statute which appears for the first time in the Code of 1880, and was continued through all the

subsequent legislation until the Code of 1906. Also, there is no longer in force any statute which prohibits suit on a contract made in the absence of the lawful privilege tax license. That feature of the law was terminated in April, 1906, which was long before this suit was brought. *Young v. Insurance Co.,* 91 Miss. 710, 45 South. 706. Also, as shown above, the note sued on was executed, and the debt novated at a time when so far as this record shows, the appellee was conducting his business lawfully, under the protection, and in the possession of, a privilege tax license.

Remembering these facts, this case we submit is clearly to be differentiated from any of those heretofore decided, except the case in 73 Miss. above cited, the clear principle of which supports our position.

Appellant relies, in his brief, on the cases of *Anding v. Levy,* 57 Miss. 51, and *Decell v. Lewenthall,* 57 Miss. 331. But those cases are not controlling, for two reasons: first, the statute is different, and secondly, the notes sued on in this case were not executed during that period of time during which the merchant had failed to pay his privilege tax.

The two cases in 57 Miss. and some like cases, arose under the Act of 1875, which by its terms made all contracts absolutely void.

Shortly after these cases were decided, the Code of 1880 was enacted, which very materially changed the statute.

It is presumable that the change in the statute, such as it was, by Judge CAMPBELL, was intended to meet, and was intended in some way to modify, the severity of the previous decisions. If not, why change the terms of the law? Certainly, it was so intended.

The statute, as newly formed, provides that, "all contracts made with any person who shall violate this act, in reference to business carried on in disregard of this law, shall be null and void, so far only as such person may base any claim upon them, and no suit shall be maintainable in favor of such person or on any such contract." (Section 489, Code 1880.)

This continued to be the form of the statute until that feature of it was repealed in April, 1906, by the Code, 1906, chapter on privilege. Under this new law we find a series of decisions made, which are much less stringent than the two cases in 57 Miss. relied on by appellant. Those decisions settle certain principles, the most conspicuous of which is that this matter is primarily one between the delinquent and the state, and not merely one between the delinquent and any private individual. Also, the statute was not intended so far to penalize the party omitting to pay his privilege tax as to deprive him of his property. For instance, the creditor of his debtor cannot assail a conveyance of property made to the delinquent creditor himself, in payment of a debt in such attitude, on the ground that it was a voluntary conveyance. The following cases are pertinent, and illustrate this modified line of holding. *Pollard v. Pheonix Co.*, 63 Miss. 244; *Peoples Bank v. Railroad Co.*, 65 Miss. 365, 4 South. 115; *Crum v. Carrington*, 72 Miss. 456, 16 South. 674; *Sun Company v. Searles*, 73 Miss. 469, 18 South. 544; *Cunningham v. Atlanta Association*, 73 Miss. 516, 19 South. 234.

It being true, as the foregoing cases settle that it is true, that the delinquent does not lose his right of property in his debt, but simply is debarred the right to sue for its recovery in the courts—very different consequences follow from that which would logically have followed, and which this court declared did follow, under the old act of 1875. The creditor held the debt; the debt was not void; it was void in so far as he should sue upon it, or base a claim upon it, manifestly meaning in the courts; in other words, it was not collectible by law.

It was substantially in the attitude of a debt barred by the statute of limitations, or a debt barred by a discharge in bankruptcy.

Now, therefore, we submit that if in such state of the case, and at a time when the creditor was no longer delinquent, but was conducting business under an adequate privilege license, his debtor should see proper to waive this defense which he

might have interposed against the debt in the original form and novate the same, and execute a note therefor, this note can be sued on in the courts.

And especially can it be sued on when the suit is not brought, as in the instant case, until the statute itself which prohibits such suit, has been repealed.

The court will note the difference between the act of 1875, which made the debt absloutely void, and the Code provision of 1880, which converted the matter into one of remedy, and expressly provides that the contract should be void only so far as the party should base a claim thereon, meaning only so far as the party should undertake to collect the same in the courts.

There is a vast difference between a statute which makes a contract null and void and one which merely declares that it shall not be effectual for suit in the courts.

The distinction for which we contend was clearly recognized by this court, as we have pointed out above in the case of *Insurance Company v. Bank,* 73 Miss. p. 478, 18 South. 931.

The opinion in the case of *Puckett v. Fore,* 77 Miss. 391, 27 South. 381, must be considered strictly in connection with the facts of that case.

Reading the opinion in the light of those facts and applying the opinion to the special course of dealing, adjudicated upon, the opinion is not incorrect, nor is it inconsistent with *Insurance Co. v. Bank,* 73 Miss. *supra.* It is simply inadequate not erroneous; and its inadequacy is not supplied by the report of the case.

There is nothing in the case of *White v. Post,* 91 Miss. 685, 45 South. 366, inconsistent with our position.

WHITFIELD, C. J., delivered the opinion of the court.

On December 29, 1906, Ammons, the appellee, filed two suits in the circuit court of Tallahatchie county against Sullivan, the appellant, upon two certain promissory notes executed by Sullivan in favor of Ammons, one dated November 24, 1905, for $493.44, and one for $500, dated January 1, 1905, each bearing

interest at 8 per cent. per annum until paid; the two suits having been afterwards consolidated. During the year 1904, and prior to and subsequent to that year, Ammons, the appellee, was engaged in the mercantile business at Sumner, Miss., and Sullivan was a planter. During the said period Ammons sold goods and merchandise to Sullivan on account for the purpose of supplying his plantation. The account having run for several years, and Sullivan not being able to pay said account, he executed the two said promissory notes in settlement of said account. The two notes having become past due and unpaid, Ammons brought suit as above stated, when Sullivan filed a plea of the general issue, also a special plea, setting up as a defense to the suit that during the year 1904, Ammons, plaintiff, was a merchant doing a general mercantile business, and that the goods and merchandise constituting the consideration of the said two notes were sold during the year 1904, and that plaintiff, Ammons, had not during the year 1904 procured a proper privilege tax license to carry on said mercantile business for said year 1904. To this special plea a demurrer was interposed, setting up, among other grounds, that the plea stated upon its face no defense, in that there was no law in existence, at the time the suit was filed, precluding said suit because of the failure to pay privilege tax license to conduct said mercantile business. The demurrer to said plea was sustained, and the suit resulted in a judgment for the plaintiff, from which this appeal is prosecuted.

The case of *Anding v. Levy,* 57 Miss. 51, 34 Am. Rep. 435, and *Decell v. Lewenthal,* 57 Miss. 331, 34 Am. Rep. 449, are inapplicable to the case made by this record. Those cases construe Acts 1875, p. 10, c. 1, § 5, which was in these words: "And any debts or claims that may accrue to any person on account of the business herein taxed, who shall fail or neglect, within thirty days after such license is due, to pay the same, shall be null and void and no suit shall be maintained in any court of law or equity, in this state, to enforce the payment of such claims, or a compliance with contracts in favor of any

person or persons failing to pay the privilege tax required by this act." Let it be carefully noted that the contracts made in violation of this statute were expressly, by the statute itself, declared to be "null and void," and it was because of this express legislative declaration of absolute nullity that the court held in the two cases *supra* that such contracts were absolutely null and void, not simply unenforceable; that the statute so worded was self-executing; that a defendant, sued upon such contract, had under that statute a vested right, not remedy, in the absolute nullity of the contract so declared by the statute, which vested right could not be taken from him, even by a repeal of such statute; and that such repeal could not, consequently, have the effect of making such contracts, once legislatively declared null and void, valid after such repeal. These two decisions must be strictly confined to the statute which they construe.

Thereafter, in Code 1880, § 589, the law was most materially changed in this regard, and it was in this last section declared that "all contracts made with any person who shall violate this act, in reference to the business carried on in disregard of this law, shall be null and void, so far only as such person may base any claim upon them, and no suit shall be maintainable in favor of such person on any such contract." Following this up, section 3401, Code 1892, provides: "And all contracts made with any person who shall violate the provisions of this chapter in reference to the business carried on in disregard thereof, shall be null and void so far only as such person may base any claim upon them, and a suit shall not be maintainable in favor of any such person on any such contract." In Laws 1896, p. 50, c. 35, § 2, the same provision is enacted, and in Laws 1898, p. 31, c. 5, § 97, the same provision is again enacted. It will thus be seen, in this review of the statutes on the subject, that beginning with the statute of 1880, and continuing from that date until the adoption of the statute of 1898 above referred to, the exceedingly severe penalty denounced by the act of 1875, *supra,* of absolute nullity against such contracts,

has been most materially changed, so that from the Code of 1880, up to and including the act of 1898, such contracts have not been null and void, but the remedy to enforce them has been suspended. The contracts were simply made unenforceable. They were not declared null and void.

Nothing prevented suit upon the contract, except the provision of these statutes. The attitude of the law, as regards such contract, from 1880 until the adoption of the revenue chapter of the Code of 1906 in April, 1906, has been such that such contracts were no longer null and void, but simply unenforceable. In fact, a tremenduous change was wrought by this change in legislation, by taking from the defendant, when sued on such contracts, the right to plead a vested right in the nullity of the contracts. From 1880 to April 21, 1906, the defendant has never had such a vested right in the nullity of the contract, which right the Legislature could not take away by the repeal of the statute denouncing such nullity against such contracts. Since the Code of 1880, and up to April 21, 1906, all that the defendant has had is the right, if he so chose, to plead that the contracts could not be enforced against him in any court in this state. In other words, to put it shortly, under the act of 1875, and the decisions construing that act, the contracts were absolute nullities, and the defendant, when sued, had a vested right to plead such nullity, and that vested right could not be taken from him by the repeal of the statute. Since the Code of 1880 the defendant has no such right. He has had merely the privilege of pleading that the plaintiff was without a remedy to enforce such contract. Under the act of 1875 it was a matter of right in the defendant, which the Legislature could not take away. Subsequently, by legislation since the Code of 1880, it is a mere matter of remedy, which the Legislature might properly take away by the repeal of any such statute. The difference is fundamental, and must be kept strictly in mind, that there may be no misapprehension either of the statutes or the decisions on the statutes in these two periods.

That this is also the true doctrine as generally accepted in other jurisdictions is shown in Wade on Retroactive Laws, § 300. After discussing therein the difference between repealing acts which take away vested rights and those which affect the remedy only, and in considering in that discussion the difference in this respect between contracts *mala in se*, and those only *mala prohibita*, the author says, in speaking of the cases of *Russell v. DeGrand,* 15 Mass. 35, and *Springfield Bank v. Merrick,* 14 Mass. 322, as follows: "In the latter case the application is made to a note which, when executed, was payable in the bills of banks of other states. This being in contravention of a statute then in force, was held void, and the subsequent repeal of the prohibitory act would not affect the contract, so as to render it valid. In this case stress is even laid upon the fact that when the note was executed such contracts were prohibited under heavy penalties. The statute was a penal one, and a part of the penalty was the forfeiture occasioned by invalidating the contract. It amounted to a declaration that the right of the maker to repudiate his contract obligation was a right of which he could not be deprived by subsequent legislation. These decisions, however, notwithstanding their unquestioned respectability, will not support this doctrine against the great weight of American authority, which leaves statutory penalties dependent upon the perpetuity of the acts by which they are prescribed. The case of *Roby v. West,* 4 N. H. 285, 17 Am. Dec. 423, was an action for lottery tickets sold at a time when the law imposed a penalty upon such transactions, without any specific forfeiture of the right of recovery. The statute was repealed after the institution of the suit, and the court held that the illegality of the transaction was a good defense to the action when brought, although the act by which the sale of lottery tickets was prohibited did not declare in terms that such contracts would not bind purchasers, and that the imposition of the penalty by statute implied a prohibition. It was also held that a repeal of the statute after the institution of the suit would not make good an act

illegal when done.   But the decision of this case is more logically supported upon the additional ground which is assigned that, 'the repealing act having been passed since the commencement of this action, to construe it to take away any ground of defense which these defendants may have had under the repealed act would give it the operation of a restrospective law for the decision of a civil cause, which is prohibited by the Constitution.' "

And the author, at pages 300 and 301, further goes on to say: "In disposing of the question, PEABODY, J., says: "The Legislature deeming it wise, as a measure of public policy, to restrain the circulation of notes of denominations less than $5, made the act unlawful, and prohibited it, under the consequence, among others, of refusing enforcement of any contract based on such consideration.   That law had its day, and was repealed when a change in the wants of society, or new light as to its real interests, arose.   By that repeal the law is decided to be unwise, for the present, at least, and the contracts made under it, whose consideration was always morally good as between the parties, are now without the legal impediment of being contrary to legally established public policy (contraband of law), and are valid.'   Reference is made in the opinion to *Curtis v. Leavitt*, 15 N. Y. 9, and *Leavitt v. Curtis*, 15 N. Y. 9, where the doctrine is laid down that the repeal of usury laws removes the legal impediment to recovery on contracts made contrary to its provisions when in force.   There are two courses of reasoning upon this subject, which, when followed out, lead to diametrically opposite conclusions.   One of them is by insistence upon the distinction between rights demanded affirmatively and exemptions claimed negatively under a penal statute after its repeal, admitting that affirmative relief cannot be granted against obligations moral in themselves, which were voluntarily assumed, when such relief is sought after the repeal of the invalidating act but holding that, when such an obligation is sought to be enforced, its original illegality will cling to it, so far as to

warrant a denial of the legal remedy. The other course is to view the provision by which contracts contrary to the penal statute are rendered incapable of enforcement as dealing entirely with the remedy, touching the right only by way of denial, and that prospectively. When the act invalidates contracts for reasons of public policy, this is merely a penalty for disobedience, and the repeal of the statute naturally restores the remedy and abrogates the penalty. The latter seems the most consistent with other well recognized principles of construing legislative acts, is least likely to defeat the legislative intention, and will rarely, if ever, be found to work a hardship by defeating a meritorious defense. In *Bank of Missouri v. Snelling,* 35 Mo. 190, the defendant sought to take advantage of acts working a forfeiture of plaintiff's charter. The act authorizing such a plea had been repealed prior to the suit, though subsequent to the contract sued on. BATES, J., in delivering the opinion, says: 'The act, when in force, vested no rights in any person. It only granted the privilege to enforce a penalty, which privilege could be withdrawn at any time.' "

We come now to the third period. By section 3894, Code of 1906, the entire clause, providing that no suit could be brought to enforce any such contracts where the privilege tax had not been paid, is dropped from the law absolutely, and that section on this subject reads as follows: "Any person or corporate body who shall exercise any of the privileges taxed by law in this state, without first paying the tax and procuring the license as required, shall, on conviction, be fined not less than an amount equal to five times the tax imposed on such privileges, or shall be imprisoned in the county jail not more than six months, or both by such fine and imprisonment." And this section was part of the chapter on privilege taxes, which chapter went into force by the act of adoption of the Code of 1906 (section 11) on April 21, 1906 (Laws 1906, p. 82, c. 101), some months before the larger part of the Code of 1906 became operative, to wit, on the 1st day of October, 1906, as held in *Young v. Insur-*

*ance Co.,* 91 Miss. 710, 45 South. 706. From and after the 21st of April, 1906, we have the third period of legislation on this subject, under which suit on such contracts is no longer barred; the obstruction to such suits, the provision which we have been discussing, preventing suits on such contracts being absolutely dropped out of the law by this section 3894, Code of 1906. A very little reflection will disclose the trend of legislative thought on this matter. During the first period, under the act of 1875, the Legislature denounced against such contracts absolute nullity. Not only could no suit be brought on them, but the defendant had a vested right to plead their nullity, which right could not be taken away by the repeal of the statute. During the second period of legislation on the subject, from the Code of 1880 to April 21, 1906, the Legislature mitigated the severity of the penalty by taking away the declaration of nullity against these contracts, and by taking away, consequently, any vested right in the defendant to plead their nullity, and by simply providing that, as to remedy, no suit could be brought to enforce them. During this period of legislation it was a disability to sue, a matter relating to remedy alone, which the Legislature provided. It was, of course, constitutional for the Legislature, by the repeal of such statute, to revive the remedy and allow such suits to be brought. During these first two periods a part of the penalty, in the legislative view, consisted at first in taking away absolutely from the creditor his claim, and destroying it as a nullity. In the second period the Legislature did not destroy his claim, or affect his right otherwise than by denying him a remedy to enforce it. But in this third, and as we think far wiser, period of legislation on this subject, the Legislature has entirely abolished this feature of the law, and made the matter one with which the defendant debtor has nothing to do; one resting absolutely between the state and the delinquent taxpayer. And it has made the penalty quite severe, by imposing a penalty under section 3894, Code 1906, of five times the amount of the

privilege tax. Under this law the creditor, is, as he ought to be, allowed to collect his debts, but is at the same time severely, but justly, punished by a quintuple tax for his failure to discharge his duty in the payment of his proper privilege tax.

We held, in the case of *Young v. Insurance Co.,* 91 Miss. 710, 45 South. 706, that the fact of the infliction of this penalty, does not have the effect of making the contract illegal. With this construction, since 1880, the contract has not been null and void, but the remedy to enforce it prohibited: and hence a repeal of such statute revives the remedy. This follows as a necessary consequence from the decisions of this court in *Pollard v. Insurance Co.,* 63 Miss. 244, 56 Am. Rep. 805, and *Insurance Co. v. Edwards,* 85 Miss. 322, 37 South. 748. In the *Pollard* case the court said: "The statute does not deprive the owner of his property embarked in the business illegally carried on. The title is not in any manner affected. All the incidents of title remain with the rights of owner, in all respects, as to the property, except that no contract made in reference to the business not duly licensed can be enforced by him who has violated the law in carrying on the business." In the *Edwards case,* we said: "The amnesty act, as held in the *Pollard Insurance case,* 63 Miss. 244, 56 Am. Rep. 805, simply removes the barrier the state had set up between itself and a delinquent taxpayer." It necessarily results, from these decisions, that the reason why amnesty acts, such as have been passed, under the ban of this legislation, are constitutional, is because they relate alone to the remedy, not to any vested right.

The decisions in *Young v. Insurance Co.,* 91 Miss. 710, 45 South. 706, and *White v. Post,* 91 Miss. 685, 45 South. 366, are entirely correct; but there are some inaccurate expressions in those opinions, which we now correct, that they may not mislead in the future. It is said in the case of *White v. Post* that all contracts made with any person who violates the provisions of the act of 1898, under which that case was decided (Laws 1898, pp. 18–30, c. 5), are null and void; and in the concluding clause of the opinion it is said that even a sub-

sequent repeal of that act, meaning the act of 1898, without a saving clause, would not make the contract under that act valid. As we have pointed out, contracts under the act of 1898 were not null and void, but simply unenforceable; and hence the cases of *Anding v. Levy,* 57 Miss. 51, 34 Am. Rep. 435, and *Decell v. Lewenthall,* 57 Miss. 331, 34 Am. Rep. 449, had no application in the case of *White v. Post & Bowles* to a contract falling under the law of 1898, and these cases were improperly cited. In the case of *Young v. Insurance Co., supra,* it is said, on page 714, 91 Miss., and page 706, 45 South.: "Since 1880, up to the date of the Code of 1906, the privilege tax statutes contained a clause making all contracts made in this state of case absolutely null and void." The contract in that case was made on May 2, 1906, after the privilege tax chapter of the Code of 1906 went into effect on April 21, 1906, and of course, since there was then no bar to a suit, we properly held that suit could be maintained on that contract, since the remedy had been revived by the adoption of section 3894, Code of 1906. The sentence we have quoted from the opinion erroneously states the law during the period from the Code of 1880 to the Code of 1906. During that period contracts were not null and void, but simply unforceable, as shown above, and the inapt reference in the *Young case, supra, to Anding v. Levy* and *Decell v. Lewenthall, supra,* should not have been made. In short, the cases of *Anding v. Levy* and *Decell v. Lewenthall* are limited strictly to the statute which they construed, to wit, the act of 1875, and they are wholly out of place in the consideration of the entirely different statutes since, beginning with the Code of 1880.

The learned counsel for appellant insists that section 4, Code of 1906, preserves to his client the vested right to the nullity declared by the act of 1875 against such contracts; but since, as we trust we have made perfectly clear, no such nullity has ever attended any such contract since the Code of 1880, that line of reasoning is not sound. Section 4 of Code of 1906 is a saving

clause for vested rights theretofore existing, but there is no vested right here involved; and it also preserves all claims of a plaintiff and defenses of a defendant which the law allows in pending suits, but not only was there no pending suit here prior to the Code of 1906, but there was nothing in the way of suit, except the prohibition that no suits should be brought on these contracts and a prohibition as to remedy, and when Code 1906, § 3894, left out this prohibition, there was nothing from and after April 21, 1906, the date when this section went into force, to prevent suit on such contracts, even theretofore made, since the Code of 1880.

Finally, these particular suits were instituted December 29, 1906, months after this section 3894 went into effect. This suit was therefore begun at a time when there was no clause in the statute law of this state prohibiting suits on a contract like this.

There is nothing in the contention of the learned counsel for the appellee, which he bases upon his interpretation of *Insurance Co. v. Bank,* 73 Miss. 478, 18 South. 931. As we have heretofore held, any transmutation in the form of such contracts will not keep this court from looking through all forms, of whatever kind, to the fact that the original contract was made at a time when a privilege tax had not been paid, and the vice of such contract affects all subsequent changes in the mere form of the contract, as held in *Puckett v. Fore,* 77 Miss. 391, 27 South. 381. It may be true in that case that the dealings extended through ten years or more, and that there was a continuous account through the ten years, and that the notes closing accounts in these years were charged back in the account. None of these facts make any difference in the paramount principle that wherever it could be shown, under the old law, from 1880 up to April 21, 1906, that the contract was originally made during a period when no proper privilege tax had been paid, such contract would remain unenforceable, no matter how many transmutations of form the original contract might undergo. The case of *Bank v. Frazer,* 63 Miss. 231, as well pointed out

by learned counsel for appellee, is a case turning principally upon usury, and is therefore out of place in the consideration of the principle underlying these merely unenforceable contracts. Money voluntarily paid in liquidation of a contract of this last character certainly never could be recovered; but money voluntarily paid, constituting usury, can be recovered back, and this shows the inapplicability of *Bank v. Frazer* in this sort of discussion.

We are therefore of the opinion that the action of the learned court below was eminently correct, and the judgment is therefore *affirmed.*